Rosonda Brown
14344 McArt Rd. Apt#112
Victorville CA 92392
760-552-9802
Rosondabrown@yahoo.com

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
SEP - 8 2022
KEVIN P. WEIMER, Clerk
Deputy Clerk

ROSONDA BROWN, PRO SE PLAINTIFF

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

**ROSONDA BROWN**
                    Plaintiff (Pro Se)

            v.

**DELTA AIR LINES, INC.;**
**DOE MANAGER;**
**KELLY NABORS;**
**KHIA JONES**
                    Defendants

*(RELATED TO CASE*
*1:20-CV-04566-SEG-JSA)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE:     1:22-CV-3633**

**JURY TRIAL DEMANDED**

**VERIFIED COMPLAINT FOR**
**DAMAGES FOR:**

**1)Hostile Work Environment**
**Based on Race in Violation of**
**42 U.S.C. § 1981(CONTINUAL**
**VIOLATION from 2012-2020)**

**2)Race Discrimination in**
**Violation of 42 U.S.C. § 1981**

**3)Retaliation in Violation of 42**
**U.S.C. § 1981**

---

## VERIFIED COMPLAINT

COMES NOW, Rosonda Brown ("Plaintiff" or "Ms. Brown"), representing herself Pro Se, and files this, Verified Complaint for Damages, and testifies to the Court as follows:

## NATURE OF COMPLAINT

1. Plaintiff brings this action for damages, punitive damages, and all costs for Defendants' violation of her civil rights under 42 U.S.C. § 1981 (Retaliation, Discrimination, & Hostile Work Environment, which was a CONTINUAL VIOLATION from 2012-2020).

## JURISDICTION AND VENUE

2. Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 1332 (diversity jurisdiction) and 1343, 42 U.S.C. § 12117, and 28 U.S.C. § 1367.

3. Defendant Delta Air Lines, Inc. ("Defendant") is a citizen of the state of Georgia, as Delta's main corporate headquarters, where it does business, is in this judicial district. Additionally, the unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

4. Plaintiff is a citizen of the state of California, United States of America, where she is domiciled and has been domiciled at all material times herein and at all times during her employment with Delta Air Lines, Inc. Plaintiff is currently a resident of California.

5. Defendant Delta is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

6. Defendant **DELTA** is incorporated in Delaware and qualified to do business in Georgia, has corporate headquarters within this District.

7. Defendant **DOE MANAGER** is an older, married white male Delta managing agent, specifically a Delta Ramp Manager at Delta's ATL airport in Atlanta, Georgia. Defendant DOE MANAGER, is/was Alicia Kirby's manager or boss in 2018. Doe Manager told Plaintiff that his white wife, who is a Delta employee, also had a workplace injury which caused her to be disabled, and Delta returned her to her position.

8. Defendant **KELLY NABORS** is a Delta HR Managing agent, specifically an Equal Opportunity HR Manager. Upon information and belief, Defendant KELLY NABORS is a white female, employed at Defendant Delta's Corporate Headquarters in Atlanta, GA.

**9.** All Defendants may be served with process by delivering a copy of the summons and complaint to its corporate Registered Agent, Corporation Service Company, located at 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

10. At all such times, Plaintiff was an "employee" of Defendant Delta as defined under the ADA at 42 U.S.C. § 12111(4).

11. During all times relevant hereto, Defendant Delta had employed fifteen (15) or more employees for the requisite duration under the ADA and  42 U.S.C. § 1981.

Defendant Delta is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5) and 42 U.S.C. § 1981.

## FACTUAL ALLEGATIONS

12. Plaintiff began working for Defendant in or about 2011.

13. In or around 2016, Plaintiff transferred into a Ramp Agent position.

14. Plaintiff, who is African- American (black),is a member of a protected class.

15. At all times, Plaintiff was qualified for her Ramp Agent position.

16. At all times, Plaintiff was performing well in her Ramp Agent position.

17. From 2016 through termination, Defendants, at no time, had ever advised Plaintiff that Plaintiff was not performing well in her Ramp Agent position.

18. From August 15, 2018 through termination, Plaintiff did not violate any Delta policy.

19. From August 15, 2018 through around November 19, 2019, Defendants had never, at any time, informed Plaintiff that she violated or allegedly violated any Delta policy.

20. Defendants have no evidence to prove that Plaintiff violated any Delta policy at any time from August 15, 2018 through her termination.

21. On or around August 16, 2018, Delta authorized Plaintiff to return to the Delta workplace(after her workers compensation disability leave) around August 25, 2018, where Delta scheduled Plaintiff to first complete computer training sessions.

22. At all times from around August 25, 2018 through termination, Defendant Doe Manager regarded Plaintiff as being able to competently perform the essential functions of her job without an accommodation, as he suspended Plaintiff without pay,

partially based on his belief that Plaintiff, because of her race, committed criminal acts of fraud and forgery in submitting an allegedly false and fake doctor's note to fraudulently request a reasonable accommodation that he believed Plaintiff was not entitled to.

23. In or around July/August 2017,  Defendant DOE MANAGER saw Plaintiff eating a meal at work, and attempting to joke, DOE MANAGER told Plaintiff, *"Girl, don't be eating too much now, Delta needs you to be a good cotton picker, we already got too many fat and lazy she-boons out here."*

*24.* On or around August 25, 2018, Defendant DOE MANAGER told Plaintiff, *"I'm watching you, you better be a good lil Niggerette and hurry up and do them damn lessons because we need you out here pickin some cotton."*

*25.* On or around August 26, 2018, because Delta allowed Plaintiff to come back to work but never gave Plaintiff any schedule or line (as Plaintiff did not participate in last seniority bid) , Plaintiff asked Defendant DOE MANAGER if there were various shift, department or schedule options available for Plaintiff to choose from.  Defendant DOE MANAGER, attempting to joke, told Plaintiff, "We fixing to put you on the afternoon/night shift because you know damn well, *you mooncrickets can not wake up early and be to work on time in the morning."*

*26.* On or around August 28, 2018, Plaintiff engaged in protected activity by formally requesting a reasonable accommodation to Defendant DOE MANAGER by personal handing him Plaintiff's August 15, 2018 doctor's release to work "certificate" with

work restrictions, which Doe Manager, for some reason, believed was "fraud," as he believed that this August 15, 2018 doctor's release to work "certificate" was "fake," "false," and "forged" by Plaintiff.

27. But for Plaintiff's race(black,African-American), Defendants Delta & Doe Manager would not have believed that Plaintiff allegedly committed criminal acts of fraud and forgery by allegedly criminally forging a "fake" and "false" doctor's release to work "certificate from Plaintiff's doctor, whereby Plaintiff allegedly forged her doctor's signature.

28. On or around August 28, 2018, Defendant DOE MANAGER told Plaintiff , *"You ain't disabled, you being a LAZY ASS NIGGER, you just want to go back home for the rest of the summer to be a porch monkey, so you can be collecting welfare to smoke weed and eat greasy fried chicken , chitlins, watermelon and a 40 ounce, and get bred by random niggers fresh out of jail. Thats all y'all do."*

*29.* On or around August 28, 2018, after Defendant DOE MANAGER told Plaintiff that *"You ain't disabled, you being a LAZY ASS NIGGER, you just want to go back home for the rest of the summer to be a porch monkey, smoking weed, eating greasy fried chicken and chitlins, watermelon and a 40 ounce," Plaintiff responded by saying, "I oppose your racial stereotypes. None of what you are saying is true. If I didn't want to work, I wouldn't be here right now and would not have been trying to come back to work for months. I am being racially discriminated against and I going to report this to HR."*

**30.** Immediately after telling Defendant DOE MANAGER , " If I didn't want to work, I wouldn't be here right now and would not have been trying to come back to work for months. I am being racially discriminated against and I going to report this to HR," Defendant DOE MANAGER immediately suspended Plaintiff without pay.

31. On or around August 28, 2018, Plaintiff immediately reported Defendant DOE MANAGER's racially discriminatory comments, retaliatory adverse employment action of suspension without pay, and his racially abusive work environment from 2017-2018 to HR Manager Kiha Jones, to which Kiha Jones admitted to Plaintiff that DOE MANAGER was the final decision maker in making the adverse employment actions of suspension without pay and subsequent termination by telling Plaintiff , *"Well, Delta always gives the local managers the discretion to make any employment decisions they want and he decided to deny your accommodation request and to suspended you without pay. Nothing I can do about it."*

**32.** Attached as Exhibit 1 is a true and correct copy of Kiha Jones' June 8, 2015 email to Quaniah Stevenson, which is a public document available on pacer.gov, as Delta's attorney filed it on behalf of Delta Air Lines, Inc. in  Stevenson v. Delta Air Lines, Inc.

**33.**As evidenced by attached Exhibit 1, on or around June 8, 2015, Kiha Jones sent an email to Quaniah Stevenson stating in writing, *"Please work with your leaders directly for temporary(less than 30 days) accommodations. These accommodations are not handled/approved by HR."*

*34.* Attached as Exhibit 10 is a true and correct copy of Delta Bates Stamped document labelled " Delta/Hutchinson_000317," which is a public document available on pacer.gov from Hutchinson v. Delta Air Lines, Inc.

35. As evidenced by attached Exhibit 10, where Delta HR Manager Latice Gardener defers to local managers Greg Kennedy, Don O'Leary & Hussein Berry by sending an email stating"I informed EO that Warren, Tammy or I could make the decision to allow Ms. Hutchinson to work the ramp in a skirt and I would roll this up to you for consideration...Please let me know your thoughts."  Local manager Don O'Leary makes the final decision by saying, "I don't support as we don't have this as part of our uniform offerings and it is a safety issue."

**36.** On or around August 28, 2018, Delta's HR Manager Kiha Jones, on behalf of Defendant Delta, ratified Defendant DOE MANAGER's racially motived and retaliatory motivated decision to suspended Plaintiff without pay for engaging in protected activity (opposing racial discrimination and hostile work environment, formally requesting a reasonable accommodation).

37. Similarly situated white comparators(including but not limited to Christine Sullivan, Sarah Caruso, Eileen Kosakowski, Donna LaCroix, Jennifer Palmer, Joanne Roy, Priscilla Ivanoff, Maria Tamburinni, etc) were not terminated or suspended without pay after engaging in protected activity and/or making formal complaints opposing a hostile work environment and/or making formal complaints opposing discrimination.

*38.* In or around early January 2020 ,Plaintiff again reported Defendant DOE

MANAGER's 2017-2018 racially discriminatory comments, retaliatory adverse

employment action of suspension without pay in 2018, and racially hostile work

environment to Delta's HR Manager Kelly Nabors.

*39.* In or around early January 2020 ,Plaintiff also reported to Delta's HR Manager

Kelly Nabors that because of Plaintiff's race, Delta's Cargo Manager, Alberto Cruz had

sexually and racially harassed and assaulted Plaintiff from around 2012 through around

2014, subjecting Plaintiff to a  racially hostile work environment since 2012.

40. From around 2012 through around 2014, Delta Manager Alberto Cruz forced

Plaintiff to watch XXX porn of white men anally and violently penetrating black

women, whereby Manager Alberto constantly told Plaintiff, "I'm gonna fuck you in

your black ass and then fuck your black pussycat just like that" and would constantly

roughly grab, aggressively grope and violently spank Plaintiff's "black ass" and "black

pussycat," without Plaintiff's consent.

41. From around 2012 through around 2014, Delta Cargo Manager Alberto Cruz

constantly forced Plaintiff and Erika Lee to watch him masturbate in the shared office

work space.

*42.* At all times from late 2012 through around January 2020, Plaintiff had reported to

Defendants Delta and Kelly Nabors that Plaintiff objectively and subjectively believed

that because of her race, that Plaintiff was working in a severely hostile work

environment.

1
2
3
4
5

*43.* From 2012 through 2014, Defendants Delta & Kelly Nabors did not promptly investigate or taking any remedial action against Manager, Alberto Cruz, after Plaintiff made many complaints and reports to Nabors that Plaintiff was being sexually and racially harassed and assaulted on a daily basis since 2012.

6
7
8
9
10
11
12

*44.* Because Defendants Delta & Nabors refused or failed to take any remedial action after Plaintiff made formal complaints from 2012 through around 2014,  in or around 2014, Plaintiff was compelled to apply for another Delta job in an effort to transfer out of the racially abusive hostile work environment that Delta had been subjecting Plaintiff to since 2012, at Delta's Cargo office.

13
14
15
16
17
18
19
20
21
22

45. In or around 2014, Plaintiff transferred out of Delta's Cargo office and worked in ACS in Santa Ana airport, where Plaintiff's white manager and colleagues nicknamed her "blackie." On one occasion in the breakroom, Plaintiff's white Manager made a racially degrading and offensive joke to a white colleague,  "What is the difference between dog shit and black people?...Dog shit eventually turns white and stops stinking," and "yo mama so black she was born with a criminal record, bad credit and chicken bone in her mouth."

23
24
25
26
27

46. Shortly thereafter, Plaintiff transferred out of the Santa Ana airport position due to racial hostile work environment, and began working at LAX airport, where Plaintiff, Carol Watts-Lynch (black), and Erika Lee(black) had been subjected to a racially abusive work environment, which Delta ratified and refused to remedy.

28

47. At all times, the pervasive, racially abusive work environment was so severe that it altered the terms and conditions of Plaintiff's employment.

*48.* From 2012 and continuing, Defendant Delta & Nabors retaliated against Plaintiff by continuing to subject Plaintiff to a severally racially hostile work environment, or by refusing and/or failing to ever take any remedial action or investigate the racially hostile work environment.

49. From around 2012 through around 2014, every time Plaintiff made formal complaints to Defendants Delta & Nabors, Defendants Delta & Nabors threatened Plaintiff with suspension without pay and termination if Plaintiff filed an EEOC complaint.

*50.* Because Defendants Delta & Nabors refused or failed to take any remedial action after Plaintiff made formal complaints from 2012 through around 2014, in or around 2014, Plaintiff was compelled to apply for another Delta job in an effort to transfer out of the racially abusive hostile work environment that Delta had been intentionally subjecting Plaintiff to since 2012, at Delta's Cargo office.

51. Years after Plaintiff made her first complaint in 2012, Delta's Equal Opportunity HR Managers began an investigation into Manager Alberto Cruz, only because similarly situated non-black comparators made complaints of a sexually hostile work environment.

52. But for race (African American, black), Delta would have promptly investigated and/or immediately intervened and/or taken immediate remedial action in 2012 to stop

Manager Alberto Cruz from subjecting Plaintiff and Erika Lee to his racially hostile work environment, which was permeated with daily racially motivated physical assaults of being violently slapped and spanked on our "black asses" and forced to watch violent porn where black women were assaulted by white men and called "niggers" and "runaway slaves."

53. After Delta investigated the similarly situated non-black comparators' complaints of a sexually hostile work environment years after Plaintiff and Erika Lee(black) made complaints of a racially and sexually hostile work environment, Delta terminated Manager Alberto Cruz.

54. Around 2016-2017, Plaintiff's former Cargo colleague, Reinaldo(black, African American male), informed Plaintiff that Delta interviewed him about Manager Alberto Cruz, and he reported to Delta that he was also a victim of Manager Alberto Cruz's racially abusive hostile work environment, which involved not just comments but physical assault.

*55.* From around 2012 through 2020, But for race (African American (black)), Delta would not have *suspended without pay and/or terminated* Plaintiff, Carol Watts-Lynch, Erika Lee,  Donya Williams,etc.for engaging in protected activity and/or making complaints opposing a hostile work environment and/or discrimination, and/or filing an EEOC complaint, and or requesting a reasonable accommodation as Delta does not suspended or terminated similarly situated non-black comparators for engaging in protected activity.

56. But for Plaintiff's race(black), Defendants Delta & Doe Manager would not have suspended Plaintiff without pay in 2018 and/or terminated Plaintiff's employment in 2020, whereby Plaintiff casually suffered economic harm, loss of material benefits, emotional distress, etc.

*57.* On or around August 28, 2018 through February 2020, Plaintiff was subjected to adverse employment actions(suspension without pay and termination) by Delta and DOE MANAGER for requesting a reasonable accommodation for Plaintiff's disability **in contrast with similarly situated non black comparators** (including but not limited to *Jennifer Palmer, Joey ___, Kimberly Ng, Patricia Beaver, DOE MANAGER'S wife*), who were not suspended without pay and/or terminated for requesting a reasonable accommodation.

58. But for Plaintiff's race(black, African-American), Delta and/or Doe Manager would've engaged in interactive process, accommodated Plaintiff's disability, placed Plaintiff in "transitional duty" for a short time period, and/or transferred Plaintiff to the LGA SkyClub position as Delta did for Kimberly Ng, and/or assigned Plaintiff "light duty," and/or allowed Plaintiff to work in Domestic Department and/or Delta Connections flights where bags weighing over 50 lbs. were rare and/or Plaintiff allowed Plaintiff to perform administrative tasks in her department that Delta allowed Joey ____ to perform, after he requested a reasonable accommodation for his workplace injuries and/or disabilities.

59. But for Plaintiff's race(black, African-American), Delta and Doe Manager would've reasonably accommodated Plaintiff's disability as Delta regularly does for other similarly situated non-black Delta employees, including but not limited to Joey ___ at JFK Airport, Kimberly Ng, Jennifer Palmer, Patricia Beaver, Doe Manager's wife, and many others.

60. Because of DOE DELTA MANAGER's intentional racial discrimination against Plaintiff, Plaintiff suffered a materially adverse employment actions, suspension without pay from around August 29, 2018/early September 2018 through around February 2020, which affected the material terms, conditions, and privileges of Plaintiffs employment, including but not limited to loss of her weekly income.

61. Because of DOE DELTA MANAGER's intentional racial discrimination against Plaintiff, Plaintiff suffered a materially adverse employment actions, termination, in or around around February 2020, which affected the material terms, conditions, and privileges of Plaintiff's employment, including but not limited to loss of her weekly income.

## CLAIMS FOR RELIEF

**COUNT I: Hostile Work Environment Based on Race in Violation of 42 U.S.C. § 1981(CONTINUAL VIOLATION FROM 2012-2020)**

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in above paragraphs.

63. 42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

64. " 'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

65. Plaintiff is a "person within the jurisdiction of the United States."

66. Defendants subjected Plaintiff to unwelcome racially abusive work environment conduct by forcing Plaintiff to be called racially degrading names and comments , forcing Plaintiff to be vaginally and anally assaulted on a daily basis, forcing Plaintiff to watch racially degrading pornography, etc.  as a term and condition of her employment from 2012 through 2020, based on Plaintiff's race (black, African-American).

67. This racially abusive conduct that Defendants subjected Plaintiff to was severe and pervasive.

68. Plaintiff multiple complaints to Defendants' did not cause Defendants to investigate, intervene or remedy the racially abusive work environment at any time. 96.

Defendants' intentional actions created a hostile work environment for Plaintiff because of her race, (black, African-American).

69. Plaintiff found her work environment to be hostile and heavily charged with race discrimination.

70. A reasonable person of (black, African-American)race in Plaintiff's position would have found the work environment to be hostile and polluted by race discrimination.

71. Delta's Managers, HR Managers, and Equal Opportunity Managers knew, or should have known, of the racially abusive work environment beginning in late 2012 when Plaintiff reported it to Defendants Kelly Nabors & Delta.

72. Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with race discrimination, and did not exercise any investigations to prevent any further racially abusive work environment, even after Plaintiff's repeated opposition to it.

73. As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

74. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

75. Plaintiff is entitled to her reasonable attorneys' fees, costs of suit, compensatory and punitive damages pursuant to§102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

**COUNT II: Discrimination Based on Race in Violation of 42 U.S.C. § 1981**

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs above.

77. Defendants discriminated against Plaintiff by calling her racially degrading names, suspending her without pay on the basis of her race,, intentionally violating her rights under the ADA on the basis of her race,, and terminating her on the basis of her race.

78. Plaintiff's race was the determining factor and/or a motivating factor in Defendants' adverse employment actions of 1) suspension without pay in 2018 and 2) termination in 2020.

79. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

80. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

81. Plaintiff is entitled to her reasonable attorneys' fees, costs of suit, compensatory and punitive damages pursuant to§102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

**COUNT III: Retaliation Based on Race in Violation of 42 U.S.C. § 1981**

82. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs above.

83. Plaintiff made numerous complaints to Defendants' agents, managers and employees about the racially abusive hostile work environment that required Plaintiff as a term and condition of her employment, to be racially harassed with degrading comments, and to be be physically, vaginally and anally assaulted on a daily because of her race, (black-African American).

84. Plaintiff reasonably believed this term and condition of her employment to be unlawful.

85. As a result of Plaintiff complaints, Defendants' managers, agents and employees took materially adverse actions against Plaintiff including, but not limited to, suspending her without pay and terminating her employment.

86. Defendants' retaliatory actions would deter a reasonable employee from engaging in protected activity under § 1981.

87. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

88. Defendants' unlawful actions were intentional, willful, malicious, and/or Done with reckless disregard to Plaintiff's right to be free from retaliation.

89. Plaintiff is entitled to her reasonable attorneys' fees, costs of suit, compensatory and punitive damages pursuant to§102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

**PRAYER FOR RELIEF**

90. Plaintiff seeks compensatory and punitive damages pursuant to§102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

91. WHEREFORE, Plaintiff judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages( back pay from 2017 through 2023, front pay, bonuses, yearly profit sharing checks, overtime, lost 56 hours of yearly PPT, 5 weeks of yearly vacation pay, 401k price, monthly bonuses, and benefits (pass travel benefits, health insurance, 401k) and prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) $30,000,000.00 and/or in the alternative, any front pay, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All other relief to which she may be entitled.

Respectfully submitted the 28th day of August, 2022

_____

ROSONDA BROWN, PRO SE PLAINTIFF

## **VERIFICATION OF COMPLAINT**

I, Rosonda Brown, being duly sworn, deposes and says that:

I am the Plaintiff in this case and I have read the foregoing Verified Complaint, and know the contents thereof; the same is true to my personal knowledge, except these matters which are stated to be alleged "upon information and belief, and as to those matters which I believe them to be true or believed them to be true.I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 and under the laws of the U.S. that the foregoing is true and correct.

Date: August 28, 2022

_____

ROSONDA BROWN, PRO SE PLAINTIFF

**VERIFIED COMPLAINT FOR DAMAGES**                    **page 20**