UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ROSONDA BROWN,**<br><br>     **Plaintiff,**<br><br>**vs.**<br><br>**DELTA AIR LINES INC.,**<br><br><br>     **Defendant.** | **Civil Action No. 1:20:-CV-04566-SEG-JSA** |
| **ROSONDA BROWN,**<br><br>     **Plaintiff,**<br><br>**vs.**<br><br>**DELTA AIR LINES INC.,**<br><br>     **Defendant.** | **Civil Action No. 1:22:-CV-03633-SEG-JSA** |

## <u>DECLARATION OF THOMAS J. MUNGER, ESQ.</u>

I, Thomas J. Munger, Esq., declare under penalty of perjury that the following facts are within my personal knowledge and are true.

1.   My name is Thomas J. Munger, Esq.  I practice at the law firm of Munger & Stone LLP.  I am counsel for Defendant Delta Air Lines, Inc. ("Delta") in the two lawsuits styled above.  I filed this Declaration in support of Delta's Motion For Sanctions Order filed along with this Declaration.

2. On November 30, 2022, I took the deposition of Plaintiff Rosonda Brown
   ("Brown") in her first of these two lawsuits filed in 2020. ("Brown I).
   Physically present in the room during the deposition were myself, a court
   reporter, Brown, Delta's in-house counsel, and Valeria Cometto
   ("Cometto"). Relevant pages of a transcript of that deposition are
   attached to these motions as Exhibit "A."

3. At virtually the very beginning of her deposition, Brown picked up hwer
   smart phone and begin typing with her finger onto the phone screen.
   When I asked her what she was doing with her phone, she first stated that
   she was only putting the name of Cometto (who I had introduced). I told
   her that she could finish putting in that name but that I did not want her
   looking at her phone during the deposition. She then testified, "This is
   how I'm taking my notes." After I told her she could use a pen and paer
   to take notes, Brown stated that she left her pen in her car. Cometto then
   offered her a pen to Brown and put it on the table before Brown.
   However, at no time during the deposition did Brown take any notes on
   paper. Brown kept her phone with her at all timed near the deposition
   and often looked down at it when a question was pending.

4. Cometto and I noticed during the deposition that, before answering a
   question, Brown paused and appeared to be waiting before she provided

an answer.  It became clear that she was somehow getting advice from someone else (i.e. Azzarmi) between my questions and her answer to even the most simplest of questions.  As Brown's hair covered her ears, I asked her if she was wearing earbuds.  She answered, "I'm not wearing an earbud."  I asked her, "Do you have anything in your ear?"  She responded, "It is something in my ear.  Would you like me to take it out?"  I answered, "Yes."  She then took an earbud out of her ear and put it on the table.  Thus, she had knowingly testified falsely that she had not been wearing an earbud during the deposition.

5. Later in the deposition, after an approximately five-minute break, Brown had again put her earbud back in her earn and had not removed it when the deposition resumed after the break.  She took the earbud out of her ear again.  I asked her why she had the earbud at her deposition, and she responded, "Objection.  Because I purchased it."  I asked her why she brought it to her deposition and why it was in her ear during her deposition, and she testified, "Objection.  Because I use it as I'm driving and it was in my ear as I was driving safely."  This response made no sense because she had not been driving during the five-minute break but had yet put the earbud back in her ear during that break.  It was clear to me she was being dishonest and that she was obtaining advise from

Azzarmi before answering questions in her deposition.

6. After she was required to take her ear bud out, her strategy changed. Because she could not then get advice from Azzarmi through her ear bud, she rarely paused between a question and her answer. But she started another approach.

7. First, she objected to very many questions (sometimes she forgot to do so) with no stated basis for the objection. Second, she was asked questions she knew were dangerous for her and claimed not to understand the question. Third, she frequently testified that she could not recall a fact or event that she would have to know if she was representing herself, she looked at the court reporter and asked her to leave a space in the record to allow her to answer the question later. This was her plan to have Azzarmi answer those questions that she did not know the answer to after her deposition.

8. Attached as Exhibit "A" is copies of pertinent pages of a complaint filed by former Delta employee Erika Lee ("Lee") in the U.S. District Court for the Central District of California.

9. Attached as Exhibit "B" is an Affidavit signed by Azzarmi in another lawsuit by Lee against Delta in state court in New York in which Azzarmi claims to have personally served Delta with that lawsuit.

10. When asked at her deposition if she had filed any other lawsuit against Delta, she took a long time before answering the question.

11. Exhibit C is an email I received on November 23, 2022 from the rosondabrown@yahoo.com email address (i.e. from Azzarmi).

12. Exhibit D is a declaration Azzarmi filed in a lawsuit he filed in U.S. District Court, (Azzarmi v. Wurtz et al.) that was purportedly from Stephanie Acosta. Acosta claims to have served that lawsuit on William Ittounas.

13. Exhibit E is a second declaration Azzarmi filed that lawsuit that was purportedly from Stephanie Acosta.

14. Attached as Exhibit F is an email I received from Azzarmi from the bogus Brown email address and attached to that email was a Declaration purportedly from Stephanie Acosta.

15. In Brown I, I was sent from the bogus Brown email address three sets of requests for admissions on Delta totaling 458 requests.

16. In discovery objections and in filings with the Court, documents filed on behalf of Brown have included very large numbers of citations to cases of other courts and most particularly from California state courts, where Azzarmi filed his first set of lawsuits against Delta. Aside from the fact that Brown is not a subscriber to Pacer, Pacer can search for pleadings

and orders by case number, plaintiff or counsel as opposed to legal topic.

17.  On December 2 and 5, 2022, I received from the bogus Brown email address 32 separate emails with attachments of documents from various cases against Delta.  Examples are Exhibit G.  All but three of these were obtained by someone with a Pacer subscription (i.e., Azzarmi).

18.  The other three attachments were transcripts of three separate hearings in Azzarmi's workers' compensation proceeding at the New York Workers' Compensation Board.  A copy of the cover email and the first page of these transcripts is Exhibit H.  These are not generally available to the public and, in order to obtain a copy of such a transcript, one must sign up on line and formally requests such transcripts under the New York State Freedom of Information Law.  A copy of the web site page where such a request can be started is Exhibit I.  The testimony in these hearings was of William Ittounas.

19.  Exhibit J is an e-mail I received on September 1, 2022 from the bogus Brown email address.

20.  Exhibit K is an Order from the U.S. Court of Appeals for the Ninth Circuit in the appeal of a dismissal of a case filed jointly by Azzarmi and Venus Stinnett.

21.  Exhibit L is a September 12, 2022 Order Admonishing Plaintiff For The

Second Time" in a lawsuit filed by Stinnett against Delta in the U.S. District Court for the Middle District of Florida  (Stinnett.)

22. The emails I have received from the bogus Brown email address have included those calling me unethical and asinine.

23. Exhibit M is a December 15, 2022 Order in Stinnett.

24. Exhibit N is a Request For A Conference With The Court To Resolve Discovery emailed to the Court and myself from the bogus Brown email address.

25. A large number of documents that have been emailed to me in these cases have included certificates of service stating that the documents were served by regular mail to our offices.  But these documents were never received by my offices such that they were never mailed to our offices.

26. Attached hereto is an Order in Stinnett that is at Dkt. 52 of that case.


Executed this 16th day of December, 2022.


Thomas J. Munger

# EXHIBIT A

FILED
CLERK, U.S. DISTRICT COURT

JAN 2 5 2022

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  Erika L. Lee
   1054 E. Turmont St.
2  Carson, CA, 90746
   646-552-8394. Email: leeerikalatise@gmail.com
3  ERIKA L. LEE, PRO SE

4

5                    · UNITED STATES DISTRICT COURT

6            CENTRAL DISTRICT OF CALIFORNIA (WESTERN)

7

8                                )  **CASE: 2:20-cv-08754-CBM-JEM**
                                 )   **FOURTH AMENDED VERIFIED**
9    **ERIKA L. LEE**            )   **COMPLAINT FOR DAMAGES**
        Plaintiff, Pro Se        )   1) **DISCRIMINATION(FEHA,**
10                               )      **TITLE VII, 42 USC 1981, ADA);**
                                 )   2) **RETALIATION( (FEHA, TITLE**
11       v,                      )      **VII, 42 USC 1981, ADA,);**
                                 )   3) **2018 CFRA & 2019/2020 FMLA/**
12                               )      **CFRA INTERFERENCE &**
     **DELTA AIR LINES, INC., ASHLEY** )   **RETALIATION**
13   **RANGEL, JOSEPH TUMPAP**   )   4) **INTENTIONAL INFLICTION**
          Defendants            )      **OF EMOTIONAL DISTRESS;**
14                               )   5) **NEGLIGENT HIRING,**
                                 )      **SUPERVISION, AND**
15                               )      **RETENTION**
                                 )   6) **FAILURE TO ENGAGE /**
16                               )      **FAILURE TO REASONABLY**
                                        **ACCOMMODATE/ & S.B.**
17                                      **400(1); Labor Code 230 (f)(1)**
18                                  7) **FAILURE TO PREVENT SEX**
19   **JURY TRAIL DEMANDED**            **AND DISABILITY**
                                        **DISCRIMINATION**
20                                  8) **Civil Code § 51.9 claim and Civil**
21                                     **Code § 52.1 claim**
22                                  9) **HARASSMENT/HOSTILE**
                                       **WORK ENVIRONMENT(1981,**
23                                     **Title VII, ADA)**
24                                 10) **WHISTLE-BLOWER**
25                                     **RETALIATION (VIOLATION**
26                                     **OF Labor Code § 1102.5)**
27

28

FOURTH AMENDED VERIFIED COMPLAINT FOR DAMAGES page 1

## FACTS COMMON TO ALL CAUSES OF ACTION:

## SEX/RACE/DISABILITY DISCRIMINATION & RETALIATION/ HOSTILE

## WORK ENVIRONMENT/52.1 CAUSE OF ACTION  *(CONTINUAL VIOLATION*

*THEORY TOLLS Plaintiff's HOSTILE WORK ENVIRONMENT CLAIMS TO 2012)*

45. Beginning in 2012 until 2014, Delta Cargo Manager Albert Cuevas caused Plaintiff severe emotional distress by threatening Plaintiff with acts of violence, sexual and physical assault, and subjecting Plaintiff to a pervasive hostile work environment based on Plaintiff's sex and/or race and/or disability (obesity).

46. Because of Plaintiff's race, Delta threatened to terminate Plaintiff's ready reserve contract if she exercised her rights under the FMLA in violation of 42 USC 1981.

47. Because of Plaintiff's race and gender and disability (obesity), Delta Manager Alberto Cuevas forced to Plaintiff watch porn at work between 2012-2014 as he always told Plaintiff he " I love fuckin  BBWs (Big Black women) like you," and the porn Manager Cuevas made Plaintiff watch involved men having sex orgies with "BBWs."

48. Because of Plaintiff's race and gender and disability(obesity), Delta Manager Alberto Cuevas told Plaintiff in early 2012 , "I and John Doe, other male Delta manager , had done an orgy with Yazmin Garcia, but now we want to 'spit roast' a BBW like you.  We both love BBWs."

FOURTH AMENDED VERIFIED COMPLAINT FOR DAMAGES page 21

Case 1:22-cv-03633-SEG    Document 18-3    Filed 12/16/22    Page 11 of 76
Case 2:20-cv-08754-CBM-JEM   Document 145   Filed 01/25/22   Page 22 of 100   Page ID
#:5209

49. At least once week between 2012-2014 , Delta Manager Alberto Cuevas asked Plaintiff when Plaintiff was going to let him and the other Delta male manager , John Doe, "gang bang and spit roast" her .

50. According to https://www.yourdictionary.com/spit-roast and https://en.m.wiktionary.org/wiki/spit_roast, a "spit roast" is defined as "A sexual practice whereby two men service a single sexual partner at the same time, from different ends" and/or "The way of roasting an animal, such as a pig, over a fire. To do so the cook sticks a wooden/metal rod through the animal and sets it on two sticks on the other sides so the animal is over the fire."

51. According to "https://www.urbandictionary.com/define.php?term=Split-roast" a spit roast is a"A mishearing of the term spit-roast, which refers to both a method of cooking food (on a spit), and a sexual position where a woman or a man is penetrated orally and vaginally/anally, reminiscent of the cooking method."

52. From 2012 to 2014,  on several occasions, Delta Manager Alberto Cuevas often begged Plaintiff to do a "Spanish spit roast" with Yazmine Garcia, because, according to Cuevas, he had already done an orgy with Yazmine and John Doe, another male Delta manager, but Cuevas expressed to Plaintiff hat he always wanted to do a "Spanish spit roast" with 2 females.

53. According to  https://www.urbandictionary.com/define.php?term=Spanish%20Spitroast, a "Spanish spit roast" is "A sexual act. Like an ordinary spitroast however involving 2 women and 1 man instead. The

FOURTH AMENDED VERIFIED COMPLAINT FOR DAMAGES page 22

man <u>doggy</u> styles 1 of the women whilst she is licking the other woman's pussy

rather than sucking another mans dick."

54. On several occasions between 2012-2014, Plaintiff was forced to watch Delta

Manager Alberto Cuevas masturbate during work hours.

55. On one occasion in 2013, Delta Manager Alberto Cuevas came to Plaintiff's

workstation counter, pulled out his penis and said "I'm so Horny, I need to cum" and

began quickly masturbating, quickly climaxed and ejaculated all over his hand, put

his penis back in pants and then unexpectedly took that same hand and put it on

Plaintiff's face and kept saying, "taste it, taste it , it's delicious." Plaintiff began

screaming "ewwwww gross" and ran to the bathroom to wash her face.

56. On one occasion around late 2013,  Delta Manager Alberto Cuevas came up to

Plaintiff, jiggled Plaintiff's breast and lightly squeezed Plaintiff's breast and said

"got milk?" and started laughing and walked away.

57. On one occasion  in 2013, Delta Manager Alberto Cuevas, was behind Plaintiff as

she stopped to open the door, and Delta Manager Alberto Cuevas was grinding his

penis on Plaintiff's butt cheeks in an aggressive, sexually gyrating motion while

spanking Plaintiff' butt very hard, saying , "I'm gonna creampie that big black ass,

We gonna make an Oreo Cookie out of you, can't to gang bang you."

58. Around 2012/2013, Defendant Delta and/or Kelly Nabors and/or Omolola Ajayi

threatened Plaintiff with retaliation and/or termination and/or adverse employment

actions and/or revocation of material benefits if Plaintiff made any written

1   Complaints about the racially and sexually hostile work environment and racial and

2   sexual harassment created by Delta Manager Alberto Cuevas. (The test for whether a

3

4   defendant violates Section 52.1 for interference with a legal right by threats,

5   intimidation or coercion is whether a reasonable person, standing in the shoes of the

6

7   plaintiff, would have been intimidated, threatened or coerced by the actions of the

8   defendants. (Richardson v. City of Antioch (2010) 722 F.Supp.2d 1133, 1147;

9   Winarto v. Toshiba America Electronics Components, Inc. (9th Cir. 2001) 274 F.3d

10   1276, 1289-90.))

11

12   59. Because of Plaintiff's sex, Plaintiff was continually and constantly subjected to

13   unwelcome sexual advances, sexual harassing comments and requests for sex by

14   Delta Managers (Cuevas, Tamasi and/or Def. Tumpap) continually from 2012 -

15

16   2020 that altered the terms and conditions of Plaintiff's employment and created an

17   objectively abusive working environment, as Plaintiff was physically and sexually

18   assaulted.

19

20   60. Around 2013, Defendant Delta HR Manager Kelly Nabors threatened Plaintiff with

21   termination if Plaintiff made written complaints or filed a charge with the EEOC by

22

23   saying , "If you aren't happy there, then just find go get job but filing an EEOC

24   charge or making written complaints to Delta will put you on Termination Blvd."

25   61. From 2012 -2014, Plaintiff asked Defendant Delta as a reasonable accommodation

26

27   for a transfer out of Delta Cargo to not be subjected to the severely sexually hostile

28   work environment but Lola Ayaji and Kelly Nabors , Delta HR Manager, always

1   denied Plaintiff a transfer as this sexually abusive work environment was causing

2   Plaintiff insomnia, IBS, anxiety, depression, unable to focus at work, and affected the

3
4   major life activity of working.

5   62. Because of Plaintiff's race, Def. Delta refused to engage in the interactive process

6   as Def. Delta always engaged in the interactive process with Tabitha Hutchinson and/

7
8   or Jennifer Palmer and/or Kimberly Ng, similarly situated white females, but refused

9   to engage in the interactive process and/or reasonable accommodate Plaintiff and/or

10  Carroll Watts-Lynch, who are both black and both worked at Delta's Los Angeles

11
12  LAX airport.

13  63. Eventually in 2014, Plaintiff applied for an open job at LAX airport to escape the

14  sexually abusive work environment created by Delta Manager Alberto Cuevas that

15
16  Defendant Delta, at all times, aided and abetted since 2012, at in Delta's Los Angeles

17  Cargo building .

18  64. Because of Plaintiff's race/sex combination and disability (obesity), Defendant

19  Delta did not believe in 2013 that Plaintiff was being sexually harassed by Delta

20  Manager Alberto Cuevas, as HR Manager Kelly Nabors first asked Plaintiff to tell

21
22  her what a spit-roast was and then started laughing and then told Plaintiff, "well I've

23  never heard of that word heard being used for a sex act and I never heard of large

24  black women being sexually harassed, are you sure he is asking to have sex with you

25
26  when he uses the words "spit-roast" or "gang bang" or "creampie" and "Oreo

27  Cookie" or is he just asking you about cooking or to do a barbecue or talking about

28

FOURTH AMENDED VERIFIED COMPLAINT FOR DAMAGES page 25

food?" Plaintiff then explained to Delta HR Manager Kelly Nabors, "well his words

aren't so innocuous when he told me he loves BBWs and he squeezed my nipple,

rubbed his penis on my butt, and masturbated in front of me and rubbed his sperm on

my face." Kelly Nabors stayed quiet and just said, "Well, let me discuss this with my

Director and I'll circle back."

65. After Plaintiff informed Delta HR Manager Kelly Nabors the first time in 2013,

Delta Manager Alberto Cuevas' sexual harassment and sexual assault did not stop.

66. Delta Manager Alberto Cuevas' termination around 2015/2016 was based on

a complaint from another female, who complained about the sexually hostile work

environment created by Def.Delta's Manager Alberto Cuevas.

67. Only after a non-obese (disability) and/or non-black (race), similarly situated

female made subsequent, similar allegations to Plaintiff's allegation, where she also

complained of being sexual harassed and/or sexual assaulted and/or subjected to a

sexually abusive, hostile work environment by Delta Manager Alberto Cuevas, did

Def. Delta's HR Managers in Delta's Equal Opportunity proceed to investigate

because Def. Delta found this other non-obese (disability), non-black female's prima

facie allegations to be truthful and/or credible and/or believable solely based on the

this female's race and/or non-disabled (non-obese )status.

68. The pervasive hostile sexual atmosphere and/or sexual misconduct perpetuated by

Delta Managers Alberto Cuevas and, Tamasi, and Def. Tumpap, in their professional

capacities, targeted at Plaintiff, because of her sex, were not acts necessary for

Alberto Cuevas, Tamasi and Def. Tumpap to perform their managerial job duties for

Delta Airlines Inc.

69. Members of the female sex were exposed to disadvantageous terms or conditions of

employment by Delta Manager Alberto Cuevas, Tamasi and Def. Tumpap to which

members of the other sex were not exposed.

70. Delta Manager Alberto Cuevas was eventually terminated  by Def. Delta

specifically for creating a sexually abusive work environment and/or sexual

misconduct and /or sexual harassment targeted at females.

71. Upon information and belief , the female who formally complained to Def. Delta

about the sexually abusive work environment and/or sexual misconduct and /or

sexual harassment by Manager Alberto Cuevas was never terminated by Def. Delta

in retaliation for opposing sex discrimination/pervasive hostile work environment.

72. Defendant Delta has had timely notice of Plaintiff's IIED, sex, disability and race

harassment, Hostile Work environment claims, as Plaintiff told Defendant Delta's EO

office back in 2013 -2016 and  LAX HR Manager Lola Ayaji in 2012 that Delta

Manager Cuevas subjected Plaintiff to an extremely hostile work environment.

73. Def. Delta's HR Manager David Needham informed Plaintiff on February 19, 2021

that Def. Delta never investigated any of Plaintiff's various complaints of sexual/

racial harassment and sexual assault and sex/race discrimination by Delta Manager

Alberto Cuevas from 2012- February 19, 2021.

FOURTH AMENDED VERIFIED COMPLAINT FOR DAMAGES page 27

# EXHIBIT B

**Instructions: This affidavit cannot be used in divorce cases, but must otherwise be used for service of a Summons and Complaint, a Summons with Notice, a Notice of Petition and Verified Petition, an Order to Show Cause and Verified Petition, or a Subpoena. Print in black ink to fill in the spaces next to the instructions.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------x

*ERIKA LEE*

[fill in name(s)]            Plaintiff(s)/Petitioner(s),

- against -

*DELTA AIR LINES*

[fill in name(s)]            Defendant(s)/Respondent(s).

----------------------------------------------------------x

**Index Number**

*100593/2022*

AFFIDAVIT OF SERVICE
OF INITIATING PAPERS

# FILED

SEP 08 2022

NEW YORK COUNTY
COUNTY CLERK

STATE OF NEW YORK
COUNTY OF *NEW YORK*  ss:

I, [name of person who served papers] *AASIR AZZARMI*

being duly sworn, depose and say:

I am over 18 years of age and am not a party to this case.
I reside at [your address] *10217 S. Inglewood Ave., Inglewood, CA 90304*

On *9/8*          , 20 *22*, [date of service], at *9* (AM) PM [time of day], I served the attached papers [identify papers served] *Summons, Complaint, exhibits* on the defendant/respondent [name of party served] *Delta Air Lines, Inc.*
The address of the place where the papers were served is [location where papers served] *JFK Airport, Terminal 4, Jamaica, NY 11430*

I served the papers in the manner indicated below: [check box that applies]:

1) ○ **Individual**    By delivering a true copy of each to the defendant/respondent personally. I knew the person served to be the person named in those papers because [How did you know defendant/respondent?]

_____ [Fill out description of defendant/respondent on page 2].

2) ○ **Corporation**  _____ [name of business], a domestic corporation, by delivering a true copy of each to [identify person served] _____
[Fill out description of person on page 2], who is [identify his/her job title]_____ I knew the corporation to be that listed in the papers served and I knew the title of the person named above and that he/she was authorized to accept service.

**3) ✓ <u>Substituted</u>** **By delivering a true copy of each to [identify person**
**<u>Service</u>** **served]** _____ Damien - Delta Ramp Agent

**[Fill out description of person below]** a person of suitable age and
discretion, at the actual place of business, dwelling house, or usual place
of abode in the state, **and** mailing, as indicated below.

<u>Mailing</u> I also enclosed a copy of the above papers in a postpaid, sealed
envelope properly addressed to defendant's/respondent's residence or
actual place of business, located at **[address]** Delta Air Lines, Inc.,
Cargo Building 21 Area B, Jamaica NY 11430
and I deposited the envelope in a post office depository under the
exclusive care and custody of the United States Postal Service within New
York State.

**<u>Description</u>** **The individual I served had the following characteristics [Check the box**
**(Use with 1, 2** **in category]:**
**or ③)**

| <u>Sex</u> | <u>Height</u> | <u>Weight</u> | <u>Age</u> |
|---|---|---|---|
| ✓Male | ▫ Under 5' | ▫ Under 100 lbs. | ▫ 21 - 34 years |
| · Female | ✓5'0" - 5'3" | ▫ 100 - 130 lbs. | ✓35 - 50 years |
| | ▫ 5'4" - 5'8" | ▫ 131 - 160 lbs. | ▫ 51 - 61 years |
| | ✓5'9" - 6'0" | ✓161 - 200 lbs. | ▫ Over 61 years |
| | ▫ Over 6' | ▫ Over 200 lbs. | |

Color of skin [describe]: _____ brown
Color of hair [describe]: _____ black
Other identifying features, if any [describe]: _____

**▫ <u>Military</u>** I asked the person to whom I spoke whether the defendant/respondent
**Service** was in the military of the United States or New York State in any capacity
and was told that he/she was not. Defendant/respondent did not wear a
military uniform. I state upon information and belief that the
defendant/respondent is not in the military service of the United States or
New York State. The basis for my belief is the conversation(s) and
observation(s) described above.

Sworn to before me this
8th day of September, 2022

_____
JENNIFER WONG
Notary Public, State of New York
No. 01WO6211804
Qualified in Queens County
Commission Expires Sept. 21, 20__
**Notary Public**

_____
[sign your name before a Notary]

AZZARMI, AASIR AAYAN
AASIR AZZARMI
**[print your name]**

2

# EXHIBIT C

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Wednesday, November 23, 2022 11:46 AM |
| **To:** | Ben Stone; Tom Munger |
| **Subject:** | Erika Lee v. Delta (Documents and evidence for 20-cv-04566-SEG-JSA and 22-cv-0363-SEG-JSA ); |
| **Attachments:** | 031135781750.pdf; 031135781751.pdf; 031135781752.pdf; 031135781753.pdf; 031135781754.pdf; 031135781755.pdf |

Mr. Stone and Mr. Munger,

Attached is the testimony and Declaration of Erika Lee (available on pacermonitor.com) that I am using in this case , including but not limited to similarly situated comparators , Erika Lee and Kimberly Ng , (page 29-30) who transferred into the Open Ebid position at LGA skyclub that Delta denied me when I asked first back in July 2018 when I asked as a reasonable accommodation, and I was qualified for this position. Yet , in December 2018, Delta denied me this position because of my race and did not fill the position but instead gave it to Kimberly Ng, a white woman,  who was pregnant and/or previously on a maternity leave, was given this open position as a reasonable accommodation .   This will also be part of my 1981 racial discrimination case and for this case for my reasonable accommodation claim.

I will also use everything , including all the declarations, documents and evidence and depositions transcripts from Delta EO HR managers  Mindy Frederickson, Joanne Guerrant, Lisa Todd, Latrice Garderner, Ashley Rangel attached to Erika Lee's testimonial verified complaint.  Delta already has these declarations, documents and evidence and depositions transcripts . I even saw that Mr. Stone took one of these depositions for Lewis v. Delta, which was also a reasonable accommodation claim.   See all the documents attached as PDFs, as I am using all of these for this case and my racial discrimination case.

Did you answer the complaint yet or file a Motion to Dismiss for my racial discrimination case 22-cv-0363-SEG-JSA ?  When are you going to ?  Delta waived service.    Pacer says that Answer is due on 12/12/2022.   Delta  has failed to serve me with an  answer to my  complaint yet or file a Motion to Dismiss.

Also , I confirmed my 11/30/22 deposition via text message to you.  However , The judge said that the 11/30/22 deposition was only for issues and questions related to and relevant to my reasonable accommodation claims in :20-cv-04566-SEG-JSA , not my racial discrimination claims in case 22-cv-0363-SEG-JSA . Therefore,  I won't be answering any questions at deposition about my racial discrimination claims 22-cv-0363-SEG-JSA , based on the Court's decision when I asked at our last conference. Just wanted to make that clear now, so there is no confusion on 11/30.

Truly,

Rosonda Brown

# EXHIBIT D

## DECLARATION OF STEPHANIE ACOSTA

I, **STEPHANIE ACOSTA**, being first duly sworn and state as follows:

1. I am a New York resident and I am the individual who personally served Defendant William Ittounas, a New York resident, with this lawsuit in February 2020.

2. I have personal knowledge of all of the events described in this Declaration and I testify that the information set forth in this Declaration is true and correct.

3. I offer this Declaration in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss.

**4.** I have known Defendant William Ittounas since 2010, when I began working at Delta Air Lines, Inc. and William Ittounas has always lived in New York City since 2010.  His home address is  **1434 110th St Flushing, NY 11356-1446.**  William Ittounas told me that he lived in Queens many times since 2010, when I first met him.  One time, he showed me a picture of the building he lived in.   In February 2020, **I personally served him the Summons and Complaint for this lawsuit at his home residence.**

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, and the laws of the State of California that the foregoing is true and correct.

Executed in New York, NY    DATED: March 06, 2020

*Stephanie Acosta*

Stephane Acosta

# EXHIBIT E

Aasir Azzarmi
401 E 109 St Apt 1A
Los Angeles, CA 90061
323-632-8531

Aasir Azzarmi, In Pro Per

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

Aasir Azzarmi,
      Plaintiff,
vs.
HOSANA WURTZ., et. al,
      Defendants

) Case No.: **2:20-cv-00607-DMG (JCx)**
)
) **DECLARATION OF PLAINTIFF AASIR**
) **AZZARMI IN RESPONSE TO AND IN**
) **OPPOSITION OF DEFENDANTS**
) **VARIOUS MOTIONS TO DISMISS (12**
) **(b)(1) & 12(b)(6) & every other**
) **possible future colorable, specious,**
) **frivolous Motion to Dismiss**
) **Defendants might lard the docket**
) **with)**
) Hearing Date:04/10/2020
  Judge: Hon. Judge Gee, Courtroom
  8C
  Time: 09:30 AM

<u>Declaration of Stephanie Acosta</u>

I declare, under penalty of perjury under the laws of the United States and New York that the following is true and correct:

1. I previously submitted notarized affidavits based on my personal knowledge. This current declaration shall be deemed as a supplemental attachment to my previously submitted notarized affidavits.. I have personal knowledge of the facts set forth in this declaration and will competently testify to them under oath if called as a witness.

2. I was previously employed with Defendant Delta Air Lines, Inc from approximately 2010 to 2015. I have worked in airports and/or aviation and/or transportation and/or travel industry for over 10 years. I have worked at other airlines besides Delta Air Lines, Inc.  I am knowledgeable of Delta Air Lines, Inc, pass travel benefits and/or pass travel benefits policies.

3. I make this Declaration to authenticate emails that were sent to me by Defendant Chris Catania to my personal email account.( EXHIBIT 2) on October 3, 2019 .
I make this Declaration to authenticate emails that were sent to me by Defendant Jazzmaine Francis on October 2, 2019 to my personal email account.(EXHIBIT 3).  Both Defendants responded to me with these email documents attached to this declaration after I electronically served them REQUEST FOR ADMISSIONS.   I also make this Declaration to authenticate Pass Travel "FLIGHT HISTORY" log. (DELTA000207 and DELTA000208 ) Any Delta employee could authenticate this document because we all have access to our own "FLIGHT HISTORY" log.

4. I personally know Defendant William "Bill" Ittounas, as he was previously my HR Manager and I've had a professional relationship with him for over 5 years, while we were both employed at Delta Air Lines, Inc. I personally witnessed with my own eyes when Plaintiff Aasir Azzarmi was being sexually harassed and sexually assaulted on a regular basis for almost a year by Vashti, an older East Indian Caribbean female, who told many coworkers and managers, including myself, PL Daryl Gardener, BM Edwin Avelar that she was a "swinger" and a "dominatrix.". I personally witnessed with my own eyes when Plaintiff Aasir Azzarmi approached Defendant William "Bill" Ittounas in 2013 and when he told Defendant William "Bill" Ittounas that he wanted to make a formal complaint to Human Resources regarding being sexually harassed and/or sexually assaulted by Vashti at Delta Air Lines, Inc.  I personally witnessed with my own eyes when Defendant William "Bill" Ittounas laughed and told Plaintiff , "Vashti is touching your penis?  You expect people to believe that an older woman is sexually harassing a younger male. You're a man. Nobody is going to believe you. Men can't be sexually harassed. You are not a woman and because you are not a woman, Delta will not take your sexual harassment complaint seriously and you will be viewed negatively by the company for making the complaint. You are not even a full time employee yet either, I guarantee you will never be promoted to full time if you make the complaint. People here at Delta already view you suspiciously because you are a Muslim working at the airport with airplanes, so if you want to continue working here and have a career, take my advice. Trust me, I've seen this happen many times to other males before. Besides, people know you are Muslim and they don't want you working here as it is because they think you are going to bomb the airport or blow up a plane.  So I would think twice before you started writing any complaints about Vashti touching your penis in front of other employees and asking you to fuck her."  When I personally eye witnessed this conversation, because Plaintiff wanted a witness, my perception from what Defendant William "Bill" Ittounas told Plaintiff was that he was discouraging him from making any written complaints about sexual harassment and sexual assault and indirectly basically saying that he would be terminated and/or wouldn't be promoted from Ready Reserve to a full time Delta employee if he made that complaint and that only because he was born a male and that Delta wouldn't

take his complaint of sexual harassment and/or sexual assault seriously and would retaliate against him for writing a complaint.

5. As it was a very relaxed environment, Defendant William "Bill" Ittounas always told several of us at the airport, who worked with him, that he was both Greek and some type of Greek Christian, I don't recall exactly the denomination. Maybe Orthodox. I personally heard and eye witnessed Defendant William "Bill" Ittounas constantly making anti-Muslim jokes to Plaintiff, Aasir Azzarmi, and verbally reprimanding Aasir and this other African Muslim guy, who now works in Atlanta, for praying in the breakroom, "nobody wants to see this and you need to leave your religious beliefs at home or take them back to where you came from." One time I personally heard Defendant William "Bill" Ittounas, trying to joke with Aasir by asking him, "Why do Muslim women wear those burqas covering their faces and entire bodies? Because they are so ugly or so they can hide bomb?" Immediately after Defendant William "Bill" Ittounas said this out loud publicly in the breakroom in 2013, I looked at Aasir's face and he just rolled his eyes, gave a quick fake smile, and walked away. Almost everybody who worked with Defendant William "Bill" Ittounas knew that he was 1) Greek 2) had strong Christian religious beliefs and 3) had an extreme dislike of Muslims. Astoria, Queens is/or was a traditionally Greek neighborhood in New York City. One time, Defendant William "Bill" Ittounas said to Plaintiff, "You Muslims are really trying to take over the entire world, us Greek Christians cant even have our own neighborhoods, you come to our countries and neighborhoods and take over, I went to Astoria the other day and saw nothing but mosques and all these Muslims outside. You people are really turning Astoria into a big dump. " Aasir responded to him, "Bill, I don't live in Astoria so what do they have to do with me?" Defendant William "Bill" Ittounas, said, "History speaks for itself, I know what they did to my people in Greece, you are all the same." Aasir would tell Defendant William "Bill" Ittounas, "Bill, if that were true, why do Muslim groups fight amongst themselves?" Defendant William "Bill" Ittounas told Aasir, "Because you are all mentally ill." Aasir just laughed it off and said, "Bill, I should bring you to mosque with me since you have such a fascination with Muslims." Defendant William "Bill" Ittounas said, "Only if I can dump sausage, pepperoni and pig blood all over."

6. I personally have knowledge of pass travel polices and pass travel benefits at Delta Air Lines, Inc, and could testify to such matters. In the aviation industry, when an employee is accused of abusing, misusing and or violating pass travel policies, that employee is usually accused of fraud. Reference this Chicago Tribune article at : https://www.chicagotribune.com/business/ct-biz-united-airlines-employees-selling-travel-perks-fired-20190307-story.html

7. In or around 2012, Delta Air Lines, Inc employees at JFK Airport were accused and/or investigated for pass travel violations where they had some massive scam operation, selling passes to strangers. There were many terminations because of these pass travel violations, many were ramp agents. A pass travel violation results in immediate termination after investigation and with valid proof. An employee does not get a FCAN for a pass travel violation. If an employee is terminated for pass travel policy violations, that investigation is heavily documented.

8. Delta Air Lines, Inc has a progressive discipline policy. They have or had a thing called Verbal Coachings but they are documented in a thing called "E-JOURNAL." and an employee has no access to this, so your manager can just write whatever they want and you had no idea your manager accused you or even spoke to you about this but these Verbal Coachings can be positive or negative and they aren't punitive, it is just documenting a conversation. A "Written Coaching" or "WC" is when you get written up for violating a Delta policy and the policy is specifically stated on the Written Coaching. The next step in Progressive Discipline policy is a "CAN" called Corrective Action Notice. And after that is "FCAN" aka "Final Corrective Action Notice," or "FINAL WARNING" and that the next step is TERMINATION. When I violated

a pass travel policy, I was immediately terminated. I was not given any "FCAN" or "Final Warning" because Delta Air Lines had evidence in my Pass Travel History Log of my travel.

9.  It is not a violation of Delta policy to be "loud." Many Delta employees are very "loud" or extremely "loud" and many would've been given "Written Coachings" or "WC" everyday if being "loud was ever some Delta policy violation.   Delta's Employee policy Handbooks, are called "Rules of the Road" and "The Way we Fly" and they encourage employees to be "DIRECT" and "honest."  .  It is not a violation of Delta policy to be "direct."

10. Delta Air Lines Inc does not provide employees with itemized wage statements, does not pay overtime to Ready Reserves or certain employees. For example, you can be forced to work 150 hours in 1 week and your paycheck would only reflect that you worked 150 hours in 2 weeks and they paycheck doesn't reflect the days you worked, which hours.   This is how many of us Delta employees believed we were being robbed of our wages.  Many times we never got paid for mandatory government training which Delta tells us we are supposed to be paid for and they make us come to work to train.

11. I never saw a US Department of Labor poster during my employment at Delta Air Lines, Inc,
12.  Defendant William "Bill" Ittounas would threaten us in a joking manner if we ever mentioned that we were planning on applying for FMLA. When I told him I was going to need to apply, Defendant William "Bill" Ittounas told me, "now you too? everybody here is on FMLA,  now you too are going to start abusing FMLA."   Then I personally witnessed Defendant William "Bill" Ittounas tell Aasir, in front of me and a few other employees, "You are not allowed to apply for FMLA. You are not considered a full time employee and it doesn't matter how many hours you have worked. I swear to GOD , if you think about applying, you will be fired. All of you Puerto Ricans Dominicans in this airport are the most laziest people ever, you just want to collect welfare and work 1 day a week and abuse FMLA, Delta is sick of it, this is why we cant get the #1 JD Power award because of you people abusing FMLA abuse and messing up our entire operation. All of your FMLA abuse affects my profit sharing check. You are messing with my money." Defendant William "Bill" Ittounas was very hostile towards Delta employees who used FMLA on a regular basis and these employees were often terminated for being accused of abusing FMLA by Defendant William "Bill" Ittounas.
13. As a new hire, we were told that we were not an "at-will employee" by the Corporate Trainer and Station Manager, Stephanie Baker or Stephanie Baldwin, as she changed her name when she got married. Bruce was one of the trainers who often told the new hires that this was a "job for life here at Delta Air Lines Inc."  I was also always told in station meetings that we were all part of the "eternal Delta family unless you steal, cause Delta massive fines and/or legal fees, or commit violence in the workplace, you would never be fired.  We were always told even being drunk or doing drugs on the job was forgiveable and we would never be fired for substance abuse problems or addictions."  I specifically remember Stephanie Baldwin Baker and the trainer coming into the training class and saying "You are not at-will employees, this is a lifetime Job, welcome to the Delta family."

14.  Even if we had FMLA approved, most of us would tell each other that we would be scared to use it according to our Doctors recommendations because Defendant William "Bill" Ittounas would make jokes and indirect comments about being fired for the perception of abusing FMLA.

Executed on October 11, 2019 in Brooklyn, NY.

*Stephanie Acosta (signature)*

Stephanie Acosta

JAIRA I RIVERA
Notary Public - State of New York
NO. 01RI6372943
Qualified in Kings County
My Commission Expires Apr 2, 2022

*(notary signature)*   10/15/2019

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.

# EXHIBIT F

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Friday, December 9, 2022 8:34 PM |
| **To:** | Tom Munger |
| **Subject:** | Declaration of Acosta attached |
| **Attachments:** | declaration of Acosta.pdf |

Mr. Munger,

Attached is declaration of Ms. Acosta that I'm using as evidence to support my claims.  Thanks

Truly

Rosonda Brown

## DECLARATION OF STEPHANIE ACOSTA

I, Stephanie Acosta, being first duly sworn and declare:

1. I, Stephanie Acosta, have personal knowledge of all of the facts in this Declaration and the information set forth in this Declaration is true and correct to the best of my knowledge, except where stated "upon information and belief." I am at least 18 years old and I am competent to testify.

2. I, Stephanie Acosta, declare that if called as a witness, I am competent to testify as to all matters herein if called to do so and will testify to the same at trial.

3. I, Stephanie Acosta, was employed as a full-time agent by Delta Air Lines, Inc. from 2010 through 2015.

4. While employed at Delta Air Lines, Inc. from 2010 through 2015, I mostly worked at Terminal 2 at JFK Airport in Queens, NY, where I performed Ramp Agent duties, Ticket Agent duties, and Gate Agent duties.

5. At certain Delta stations, Delta requires Agents to perform Ramp Agent duties, Ticket Agent duties, and Gate Agent duties.

6. At all times, Delta required and still currently requires, according to Delta Manager Ravi Singh, that Ramp Agents be able to lift up to 100 lbs.

7. From 2010 through 2022, when I applied to work at Delta, I was required to perform a physical agility test, where I had to prove that I was able to lift between 50-100. The physical agility test that was given to me was very similar to the physical agility test in Delta's YouTube video, except that I had to specifically demonstrate I could lift 70 lbs. and then 100 lbs.

8. At times from 2010 through 2022, I have seen on delta.com and on indeed.com that some Delta job ads do say that a Delta employee only has to be able to lift 50 lbs. to be able to be qualified and to perform the Ramp Agent job. However, depending where you work, that is a false advertisement and is 100% unrealistic when working as a Ramp Agent, because there are times Delta will require a Ramp Agent to lift between 50-100 lbs. on a daily basis, especially if you are working with International flights.

9. On a daily basis, at airports such as JFK and ATL where Delta operates flights going to Africa and Latin America, the average bags are either 51-53 lbs or over 60 or over 69 lbs. on Delta flights to Africa destinations and Latin America. However, many times, Delta's computer system does not know that these bags are overweight bags because not only do ticket agents either usually forget to put "OVERWEIGHT" tags on the overweight bags (bags over 50 lbs.) but many times these overweight bags are not systematically accounted for by Delta because the ticket agents will charge the African and Latin passengers the overweight fees, pocket the cash, and/or not charge the customers at all for overweight bags.

10. In fact, around 2010-2012 at JFK Airport, a lot of agents, who were my coworkers, were terminated for charging Delta's African and Latin international passengers

Scanned with CamScanner

the overweight baggage fees and pocketing the cash, without Delta's computer system accounting for all of these overweight bags. This was a major scandal, major investigation, a major witch-hunt at my local JFK station because many Ramp Agents who worked the International flights were getting seriously injured on the job because these Ramp Agents would be quickly and aggressively attempting to lift bags which they assumed were no heavier than 45-50 lbs., which were actually 100 lb. bags, without any warnings.

11. When I had a workplace injury in 2012, which caused me to be disabled and unable to lift bags over 20 lbs. continuously, I first called Delta's Equal Opportunity Department in Atlanta and spoke to Delta HR Manager Annelyse Greene-Sanders and I told her that I needed to request a Reasonable Accommodation because I can not lift bags over 20 lbs. continuously anymore, due to my disability. Delta HR Manager Annelyse Greene-Sanders told me, "Wait, Why are you calling here for a Reasonable Accommodation? This is not how it works here, we work with the Legal Department, we only get involved if you are threatening to sue Delta Air Lines, Inc. or have already filed a discrimination charge with State or Federal agency or if we are in the process of terminating an employee or if you are appealing a termination or if you filed a workers compensation claim with Sedgwick and we are terminating you. Here at Delta, we give our local HR managers and your direct manager full discretion to make any decision they believe is necessary for the operation. So your local managers at JFK are the only ones who can grant or deny your reasonable accommodation requests if they want to, not us. As long as you don't file a workers compensation claim with Sedgwick CMS or threaten to sue Delta, we will not get involved or tell your local manager not to accommodate your reasonable accommodation request." I then told Annelyse Greene-Sanders that I would do as she recommended. But however, initially Delta does advertise on their intra-company website that you can call the Accommodations department if you need a reasonable accommodation in the form of a transfer for your disability.

12. At my local station, I spoke to my local Delta HR Manager, William Ittounas, about my Reasonable Accommodation and he told me, "It is up to your Manager. Your direct manager gets to make the decision based on their perception, not me and not Equal Opportunity Managers in Atlanta. Ms. Sanders in Atlanta can't do anything for you, she is just here to do what the Legal Department tells her to do and to give legal advice to your Local leaders, such as me and your direct manager, if there is a situation we can not handle or it involves an employee threatening to sue or Sedgwick CMS is involved.

13. Because my local direct managers, Vitaly, who is white, liked me, he always granted my reasonable accommodation requests and told me that I no longer had to lift any bags anymore, and he accommodated my disability by assigning me to work in the Ramp Agent office doing dispatch and administrative paperwork.

14. While working in the Ramp Agent office at JFK Terminal 2, I worked with Joey, an Italian American white male, who was hired to be a Ramp Agent. Joey also had a disability based on his workplace injuries, where he could no longer lift bags —

anymore. Joey told me that his OSM manager granted his reasonable accommodation and permanently assigned him administrative work and dispatch work, without Joey having to bid for this position.

15. After my co-worker Judy-Ann Bryant, who is black, was disabled due to her workplace injuries, around summer 2013, Judy-Ann Bryant, asked manager, Vitaly, who is white, for a reasonable accommodation request, he told her in front of me, "No, you are just being lazy and you just want to work inside because you don't want to work in the summer heat, but you were genetically bred to work outside in the African Sahara and on plantations in the South. Mother Nature gave you dark skin to be able to handle the sun better than us whites, you are from Africa, so Delta needs you outside, you know white people cant handle the sun like you, they'll get skin cancer, you won't because your black skin protects you."

16. Anecdotally speaking, only on a certain few days of the year and only on certain domestic flights and only occasionally, a Ramp Agents might have a day where they only lifted, pulled, carried, pushed, moved bags and objects weighing 50 lbs. or less, but this is also subjective, based there is absolutely no way a Ramp Agent can adequately determine how much each bag weighs, as Delta does not provide scales in the bag rooms or on the runways or ramps. Also, a Ramp agent does not have the time or operational need to be weighing every bag, as the weighing of bags is the job duty of ticket agents and/or Skycaps, not Ramp Agents. In a Ramp Agents' daily performance of their duties, there is no objective way for a Ramp Agent to really know the exact weight of each bag that they are lifting.

17. When Ramp Agents asks Delta for reasonable accommodations based on a doctor's note that contains lifting restrictions, Delta almost always reassigns them to Domestic flights only, or gives them Ramp administrative or dispatch duties, or a transfer to another airport positions such as SkyClub, Ticket Counter, etc. Delta never asked to see my doctor's note when Delta granted my reasonable accommodation request based on my lifting restrictions of being unable to lift any objects or bags over 20 lbs.

18. Other Delta employees, some former, such as Judy Ann-Bryant, Omar Elgazar, Shon Richards, Ometa, also know this white Ramp Agent named Joey at JFK Airport, Terminal 2, whose disability was permanently reasonably accommodated by Delta for years by assigning him Ramp agent office administrative/dispatch duties with an office and a desk to work.

19. . I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746 and under the laws of the U.S. that the foregoing is true and correct. Executed on 12/4/2022

**STEPHANIE ACOSTA**

# EXHIBIT G

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Friday, December 2, 2022 7:16 PM |
| **To:** | Tom Munger |
| **Subject:** | Linda Nimpson deposition transcript |
| **Attachments:** | Boas_v_Delta_Airlines_Inc__miedce-18-13775__0027.5.pdf |

Mr. Munger,

See attached Deposition transcript of Linda Nimpson that I'll be using as evidence to support my claims.

Truly ,

Rosonda Brown

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Monday, December 5, 2022 5:34 PM |
| **To:** | Tom Munger |
| **Subject:** | Several declarations And documents from Lewis v. Delta |
| **Attachments:** | Lewis_v_Delta_Air_Lines_Inc__nvdce-14-01683__0084.6.pdf |

Mr. Munger ,

I'll be using this evidence attached as PDF to support my claims.

Truly

Rosonda Brown

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Monday, December 5, 2022 5:46 PM |
| **To:** | Tom Munger |
| **Subject:** | Kirk Kozy email |
| **Attachments:** | Lewis_v_Delta_Air_Lines_Inc__nvdce-14-01683__0075.78.pdf |

Mr. Munger ,

I'll be using this evidence attached as PDF to support my claims.

Truly

Rosonda Brown

## Tom Munger

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Monday, December 5, 2022 5:49 PM |
| **To:** | Tom Munger |
| **Subject:** | Lisa Todd transcript |
| **Attachments:** | Lewis_v_Delta_Air_Lines_Inc__nvdce-14-01683__0075.85.pdf |

Mr. Munger ,

I'll be using this evidence attached as PDF to support my claims.

Truly

Rosonda Brown

1

# EXHIBIT H

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Friday, December 2, 2022 7:18 PM |
| **To:** | Tom Munger |
| **Subject:** | Deposition transcript of William Ittounas |
| **Attachments:** | AZZARMI, AASIR DC 10--3-18.pdf |

Mr. Munger,

See attached Deposition transcript of William Ittounas that I'll be using as evidence to support my claims.

Truly ,

Rosonda Brown

MINUTES

WORKERS' COMPENSATION BOARD

STATE OF NEW YORK

Hearing Point:  New York, New York

Date of Hearing:  October 3, 2018

AASIR AZZARMI                    Claimant

DELTA AIRLINES                   DC Case No. 


HEARING BEFORE THE WORKERS' COMPENSATION BOARD

PRESENT:  MELISSA RICHBURG, WCL JUDGE


                              Marcy Lyons Manna
                              Verbatim Reporter

APPEARANCES:

Claimant present pro se
D. Secemski, Esq. for the claimant


WITNESSES                                    PAGE
The Claimant                                   2
William Ittounas                              21

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Friday, December 2, 2022 7:21 PM |
| **To:** | Tom Munger |
| **Subject:** | Deposition transcript of William Ittounas |
| **Attachments:** | AZZARMI, AASIR DC 2-06-19.pdf |

Mr. Munger,

See attached Deposition transcript of William Ittounas that I'll be using as evidence to support my claims.

Truly ,

Rosonda Brown

MINUTES

WORKERS' COMPENSATION BOARD

STATE OF NEW YORK

Hearing Point:  New York, New York

Date of Hearing:  December 5, 2018

AASIR AZZARMI                    Claimant

DELTA AIRLINES                   DC Case No.

HEARING BEFORE THE WORKERS' COMPENSATION BOARD

PRESENT:  MELISSA RICHBURG, WCL JUDGE

Marcy Lyons Manna
Verbatim Reporter

APPEARANCES:

Claimant present pro se
D. Secemski, Esq. for the employer

WITNESS                                          PAGE
William Ittounas                                   2

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Friday, December 2, 2022 7:21 PM |
| **To:** | Tom Munger |
| **Subject:** | Deposition transcript of William Ittounas |
| **Attachments:** | AZZARMI, AASIR DC 2-06-19.pdf |

Mr. Munger,

See attached Deposition transcript of William Ittounas that I'll be using as evidence to support my claims.

Truly ,

Rosonda Brown

MINUTES

WORKERS' COMPENSATION BOARD

STATE OF NEW YORK

Hearing Point:  New York, New York

Date of Hearing:  February 6, 2019

AASIR AZZARMI                     Claimant

DELTA AIRLINES INC                DC Case No. 


HEARING BEFORE THE WORKERS' COMPENSATION BOARD

PRESENT:  MELISSA RICHBURG, WCL JUDGE


Marcy Lyons Manna
Verbatim Reporter

APPEARANCES:

Claimant present pro se
D. Secemski, Esq. for the employer


WITNESSES                                          PAGE
William Ittounas via telephone                       5
Edwin Avelar via telephone                          64

# EXHIBIT I

Case 1:22-cv-03633-SEG    Document 18-3    Filed 12/16/22    Page 47 of 76

# Request Workers' Compensation Board Records Through The New York State Freedom of Information Law

## Overview

The Freedom of Information Law ("FOIL"), Article 6 (Sections 84-90) (https://www.dos.ny.gov/coog/foil2.html) of the NYS Public Officers Law, provides the public right to access records maintained by government agencies with certain exceptions.

"Record" means any information kept, held, filed, produced or reproduced by, with, or for this agency, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or disks, rules, regulations or codes.

Learn more about records access and GovQA (https://wcbny.govqa.us/WEBAPP/_rs/).

If you would like YOUR records from this agency, you may not have to file a FOIL request. Find out more about Personal Privacy Protection Law (PPPL) Requests (/content/main/regulations/PPPL.jsp).

## Request Records

Use the GovQA online form

SUBMIT A GOVQA REQUEST

Mail a written request to:
Records Access Officer
Workers' Compensation Board
Office of General Counsel
328 State Street
Schenectady, New York 12305

Email a written request to:
officeofgeneralcounsel@wcb.ny.gov (mailto:officeofgeneralcounsel@wcb.ny.gov)

Fax a written request to: (518) 402-0113

Submit a request for records in person:
You can make a request for records at our Executive Offices located at 328 State Street, Schenectady, New York. Upon entering the main entrance of the building, advise Security Staff that you would like to request records. Security Staff will contact the Records Access Office, and a staff member will provide assistance. Please be advised records require review prior to disclosure. As a result, documents and records will not be immediately available.

# FOIL Process

Within five business days of the receipt of a written request for a record reasonably described, we will send you a letter either: making such record available; denying such request in writing; or furnishing a written acknowledgment of the receipt of such request. If you have not received a letter within five business days, please contact us at (518) 486-9564 or officeofgeneralcounsel@wcb.ny.gov (mailto:officeofgeneralcounsel@wcb.ny.gov).

An acknowledgment letter will provide you with an estimate of when the records you request will be available, which shall be reasonable under the circumstances of the request. This date is determined by the number of documents you request, their format, their availability, the time it takes to redact any information that cannot be disclosed pursuant to FOIL, the time it takes to assemble the documents, and other factors.

If the records you request require a fee to be paid, you will be notified prior to the records being released to you. Payment is to be made via personal check, certified check, or money order payable to the New York State Workers' Compensation Board. Unless a different fee is otherwise prescribed by statute, Public Officers Law §87(1) authorizes an agency to charge a fee of 25¢ per copy for copies of records up 9"x 14", or the actual cost of reproducing a record. In determining the actual cost of producing a record, an agency may include only:

- an amount equal to the hourly salary attributed to the lowest paid agency employee who has the necessary skill required to prepare the requested record(s), if at least two hours of agency employee time is needed to prepare a copy of the record(s) requested;
- the actual cost of the storage devices or media provided to the person making the request in complying with such request; and

Case 1:22-cv-03633-SEG    Document 18-3    Filed 12/16/22    Page 49 of 76

- the actual cost to the agency of engaging an outside professional service to prepare a copy of a record, but only when an agency's information technology equipment is inadequate to prepare a copy, if such service is used to prepare the copy

Once the requested records are prepared, you may receive the records via email, fax, paper, CD/DVD, or USB. Records are available for inspection, by appointment, on business days between 9:30 AM and 4:00 PM at the Board's Executive Offices, 328 State Street, Schenectady, New York 12305. You may schedule an appointment for in-person inspection of records by calling (518) 486-9564.

# Right to Appeal

Under provisions of the Public Officers Law, you may appeal a FOIL determination. If you desire to submit such an appeal, you must do so within 30 days of the written response to your FOIL request. Please include a copy of the original request for records and a copy of the FOIL response letter you received along with your appeal letter to:

Executive Director
Workers' Compensation Board
328 State Street
Room 438
Schenectady, New York 12305

You will be informed in writing of the decision within ten business days of our receipt of such an appeal. Please indicate the FOIL Request Number when corresponding on this subject.

# Subject Matter List

The following is a current list of records, by subject matter, that are maintained by this agency. Some of the listed records may be exempt from disclosure pursuant to the Freedom of Information Law.

Subject Matter List (/content/main/regulations/SubjectMatterList.jsp)

# Agency FOIL Regulations

FOIL Regulations for Workers' Compensation Board (12 NYCRR Part 425) (https://govt.westlaw.com/nycrr/Browse/Home/NewYork/NewYorkCodesRulesandRegulations?guid=I089f2350ad0d11dda763b337bd8cd8ca&originationContext=documenttoc&transitionType=Default&contextData=(sc.Default))

# Helpful Tips

For more information about FOIL, please visit the New York State Committee on Open Government's website (https://opengovernment.ny.gov/committee-open-government).

When submitting a FOIL request:

- Be as specific as possible in describing the requested records. Include relevant dates, names, descriptions, etc. See suggested language (https://opengovernment.ny.gov/sample-letters) for a FOIL request from the Committee on Open Government.
- Specify whether you would like to inspect the records or have copies of the records sent to you.
- If records are available, specify how you want them sent, i.e., via US mail, email or fax. We may choose to send the records by U.S. mail, if you have requested a large volume of records, for security or other important reasons. We will notify you of any charge for reproducing such records before they are sent to you.
- Include your email, mailing address and fax number, as well as a telephone number where you can be reached during business hours, if it is necessary to clarify your request.
- Please note that the agency is not required to create a new record in response to FOIL requests.

Answers to frequently asked questions can be found in FAQs about the Freedom of Information Law (https://opengovernment.ny.gov/frequently-asked-questions-0).

# EXHIBIT J

**Tom Munger**

| | |
|---|---|
| **From:** | Rosonda Brown <rosondabrown@yahoo.com> |
| **Sent:** | Thursday, September 1, 2022 5:46 PM |
| **To:** | Tom Munger |
| **Subject:** | Question about the Disputed Facts |

Mr. Munger,

After reading your email to my previous attorney and your other emails to me and your response to the MJOP, and based what you stated to the Court today , It seems your position is that this case or claim all comes down to only 1 disputed fact of whether or not the August 8, 2018 is fraud or not fraud. Is this the only disputed fact you believe exists ? Or Are there other disputed facts you believe exist ?

I'm sorry but I do not understand and I would like to understand your legal theory that somehow you contend that I was not allegedly entitled to a reasonable accommodation because I could Perform all essential functions. Can you explain what law supports this legal theory ? I just don't get why you keep contending that legally I was allegedly not entitled to a reasonable accommodation because I could Perform all essential functions. Please explain, you do not make your legal theory clear.

Truly

Rosonda Brown

# EXHIBIT K

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 23 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AASIR AZZARMI; et al., | No. 21-55265 |
| Plaintiffs-Appellants, | D.C. No. 2:20-cv-01529-DMG-JC Central District of California, Los Angeles |
| v. | |
| DELTA AIR LINES, INC.; et al., | ORDER |
| Defendants-Appellees. | |

Before:    SCHROEDER, SILVERMAN, and MURGUIA, Circuit Judges.

Appellant Davis's motion for voluntary dismissal of this appeal (Docket

Entry No. 17) is granted.  This appeal is voluntarily dismissed as to appellant

Davis.  *See* Fed. R. App. P. 42(b).

Upon a review of the record, and appellants Azzarmi and Stinnett's

responses to the court's May 4, 2021 order, we conclude this appeal is frivolous.

We therefore deny appellant Azzarmi's motion to proceed in forma pauperis

(Docket Entry No. 13), *see* 28 U.S.C. § 1915(a), and dismiss this appeal as to

appellants Azzarmi and Stinnett as frivolous pursuant to 28 U.S.C. § 1915(e)(2)

(court shall dismiss case at any time, if court determines it is frivolous or

malicious).

All other pending motions are denied as moot.

**DISMISSED.**

# EXHIBIT L

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**VENUS STINNETT,**

**Plaintiff,**

**v.**                                    Case No: 6:22-cv-431-WWB-DAB

**DELTA AIR LINES, INC.,**

**Defendant.**

---

### ORDER ADMONISHING PLAINTIFF
### FOR THE SECOND TIME

This cause comes before the Court on review of several documents recently

filed in the case that showcase Plaintiff Venus Stinnett's lack of cooperation and

failure to follow the Rules of this Court and the Federal Rules of Civil Procedure in

creating a schedule and prosecuting her case for trial. On August 5, 2022, District

Judge Berger entered an Order to Show Cause "why this case should not be

dismissed, pursuant to Local Rule 3.10, for lack of prosecution due to the non-filing

of a Case Management Report within the time prescribed in the Court's Notice of

Local Rule 3.02(a)(2)." Doc. 28.

On August 8, 2022, Plaintiff responded to the Order to Show Cause and

attempted to file a unilateral case management report. Doc. 29, 30. Defendant Delta

Air Lines, Inc. ("Delta") responded by filing its own unilateral Case Management

Report stating:

> The parties have not conducted the planning conference. Although
> Middle District of Florida Local Rule 3.02(a)(1) requires that parties
> "conduct the planning conference required by the Federal Rules of Civil
> Procedure in person, by telephone, or by comparable means,"
> *undersigned counsel received, purportedly from Plaintiff, an email
> prohibiting counsel from calling Plaintiff. See* Def. Delta Air Lines,
> Inc.'s Resp. to the Court's Order to Show Cause & to Pl.'s Resp. to
> Order [to] Show Cause at 3. In her Response to [the] Order [to] Show
> Cause, *Plaintiff appears to rule out a conference, and appears to
> require that Defendant submit its proposed revisions by email rather
> than in a conference. See* ECF No. 29 at 2-3 ("Shall Opposing Counsel
> make revisions by sending me an email to Plaintiff by August 17, 2022,
> Plaintiff then [sic] refile it by August 19, 2022, labelling it as the
> 'Amended Case Management Report.'"). *In light of the fact that
> Plaintiff unilaterally filed a Case Management Report without first
> attempting to confer with Defendant's counsel, see* ECF No. 30,
> Defendant is filing its proposed Case Management Report.

Doc. 33 (emphasis added). To resolve the issues in conferring on a schedule, the

Court held a scheduling hearing with Plaintiff appearing *pro se* and one attorney for

Delta in person and a second attorney appearing by phone. Doc. 41.

At the August 23, 2022, hearing, the Court reviewed at length Plaintiff's

obligations as a litigant proceeding *pro se* to adhere to the Rules of this Court and

the Federal Rules of Civil Procedure. *Id.* The Court took a recess at the hearing for

Stinnett and Delta's counsel to meet in a room adjacent to the courtroom and confer

on the dates for the Case Management Report ("CMR"). *Id.* After the recess, the

parties returned to the courtroom and represented to the Court that they had agreed

on dates for the CMR, and the CMR would be filed forthwith. *Id.*

Six days later, instead of the CMR, Delta filed its Notice Regarding Case

Management Report (Doc. 42), explaining that the CMR with the agreed dates from

the August 23 hearing was *not* filed because Stinnett would not respond:

> Delta's counsel never received a response to the email requesting
> that Plaintiff sign the CMR. Decl. ¶ 10. Instead, on August 24, 2022,
> Delta's counsel received an email from the suspected Azzarmi[1] account
> (lavenusstinnett@gmail.com), which set forth new purported rules that
> Delta's counsel must follow when communicating with Plaintiff. Decl. ¶
> 11, Ex. B at 1. The email stated that undersigned counsel is the only Delta
> attorney who is allowed to contact Plaintiff; that undersigned counsel is
> permitted to contact Plaintiff only at the suspected Azzarmi email address,
> and that Plaintiff will not respond to emails sent to any other address; and
> that undersigned counsel is not permitted to call Plaintiff without her
> consent in writing:
>
>> I decided that : 1) only you are allowed to email me. Ira is not
>> allowed to email me or contact me at any time. You are only
>> allowed to call me with my written permission and only after
>> I confirmed a call with you from this email address.
>> 2) you can only email me at this email address and no other
>> email address.
>> 3) I will not respond to any emails from any Delta lawyers at
>> any of my other email addresses. And no other Delta lawyers
>> have permission to randomly call me and harass me or I will
>> be seeking a protective order.
>> 4) You do not get to decide or choose what email address or
>> phone number I demand to be contacted at. Only I have this
>> right and you do not get any say in this matter. Now if you
>> refuse to respect my demands , then we can go back to Court
>> for this issue, which is not an issue, but which you attempt to
>> make an issue to distract from the merits of my case. Once

---

[1] According to Delta, Azzarmi is a third party unrelated to the case who had litigated against Delta in the past.

> again, I will only respond to you from this email and you do
> not have permission to ever call me without my explicit
> consent in writing from this email address. No other Delta
> lawyers can email me or call me or contact me.

Doc. 42 (Magrisso Decl.). The following day, on August 30, 2022, the Court

issued the third Order to Show Cause (Doc. 43) to Stinnett ordering her to show cause

in writing why sanctions, including dismissal of the case, should not be imposed for

failure to participate in prosecution of the case, cooperate in preparing the CMR and

follow the Local Rules[2] as required by District Judge Berger's Order which

specifically warned that:

> Failure to comply with ANY Local Rules or Court Orders may result in
> the imposition of sanctions including, but not limited to, the dismissal
> of this action or entry of default without further notice.

Doc. 3.

Stinnett responded on August 31, 2022, in a contradictory, rambling diatribe

against Delta's counsel:

> Plaintiff did cooperate in preparing the Case Management
> Report, however, there were things that Plaintiff did not agree with
> and the Opposing Counsel are not my attorneys, as I still am searching
> for an attorney, and Opposing Counsel did not allow me to have a
> voice and do not allow me to participate, nor do they respect my basic
> simple requests. For example, there are things I did not agree with in
> their final version of the Case Management Report, which were not
> things that I agreed with in person. Therefore, I corrected the Case
> Management Report to reflect my wishes and I filed it with the Court

---

[2] *See* Local Rule 3.10: "Failure to Prosecute; Dismissal. A plaintiff's failure to
prosecute diligently can result in dismissal if the plaintiff in response to an order to show cause
fails to demonstrate due diligence and just cause for delay."

on 8/31/2022. Opposing Counsel both seem to think that they can make decisions for me and I do not agree with the hostile way they speak to me or try to control the conversations, they are very unprofessional, and everything is a one-way street with them. This is why Plaintiff is requesting SPECIAL HANDLING during discovery and would like DISCOVERY IN PHASES, such as PHASE I (phase with deadlines for written discovery) and then PHASE II (phase with deadlines for depositions). Plaintiff can already predict that Opposing Counsel are not going to cooperate in good faith in discovery, are going to be playing games, lying to the Court, and being extremely hostile and resistant. Plaintiff respectfully requests the Court assist with SPECIAL HANDLING, such as Court ordered deadlines, because Opposing Counsel will not freely and independently cooperate with Plaintiff in good faith to resolve discovery disputes. Plaintiff followed the local rules by filing the completed Case Management Report with the Court , with her OBJECTIONS to the things she did not agree with, but yet Opposing Counsel refused to respect. Opposing Counsel are both the ones who are refusing to cooperate and follow local rules. In any event, the Case Management Report has been completed and filed with the Court.

Doc. 44. Stinnett's Response to the August 30 Order to Show Cause was not signed with Stinnett's original, handwritten signature, merely with an "/s/" omitting her name; the same for the certificate of service. *Id.* at 3.

Stinnett also filed her unilateral version of the CMR with typed-in dates, but with handwritten scrawl on some of the other entries, such as:

Plaintiff unilaterally requests special handling. Specifically, Defendants are ordered to respond to discovery requests;

Discovery should be conducted in phases:  X Yes; written then depositions.

Doc. 45. These scrawled additions were clearly *not* adopted by Delta's counsel and were not initialed by Delta's counsel and, yet "/s/ Joseph D. Magrisso" was

misleadingly shown on the signature line as if Delta's counsel had signed and agreed to the document. Doc. 45. On September 2, 2022, Delta's counsel filed a Response to Stinnett's Case Management Report stating that, although the typewritten dates were agreed to, he had *not* agreed to the handwritten alterations made by Stinnett and no additional conference had taken place before Stinnett unilaterally filed her version of the CMR. Doc. 46.

As an initial matter, Stinnett has *repeatedly* failed to cooperate in this case, even after the Court's admonition at the August 23, 2022, hearing that she must follow the Federal Rules of Civil Procedure and the Local Rules, which includes cooperating with opposing counsel in proposing a schedule for the case. Additionally, as a non-lawyer, Stinnett is further admonished that all pleadings, motions, or other papers filed with the Court by her **must bear her original signature—not an electronic signature**—or they will be rejected and stricken by the Court. *Pro se* litigants are subject to the same laws and rules of court as litigants who are represented by counsel. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Particularly in this case, where Delta has raised the possibility that Stinnett is receiving assistance from a non-lawyer in preparing her pleadings, her original signature serves as her certification, pursuant to Federal Rule of Civil Procedure 11(b), that the document is not submitted for any improper purpose; that the claims or defenses presented in it are warranted by existing law; and that there exists

reasonable factual support for the allegations or assertions made. Stinnett is advised to review and become familiar with Rule 11, as the failure to comply with its provisions can result in the imposition of sanctions, including monetary fines.

Here, Stinnett's Response to the Order to Show Cause (Doc. 44) is not physically signed with her original handwritten signature—just "/s/"—and will be stricken.

In addition, it is of the utmost importance—as the Court explained in detail at the August 23, 2022, hearing—that opposing counsel and the Court be able to communicate with Stinnett and that she promptly respond.

On March 11, 2022, the Court granted Stinnett's Motion to the extent she requested to receive notices of electronic filings from CM/ECF. Doc. 11. The email she provided to the Court on March 9, 2022 was "lavenusstinnett@gmail.com." Doc. 7. However, at the August 23, 2022 hearing, when Delta raised an issue with Stinnett statements that she had not received certain documents Delta had emailed to the "lavenusstinnett@gmail.com" address, Stinnett gave the Court and opposing counsel two *other* addresses to use, stinnett924@gmail.com and stinnett924@hotmail.com. Delta's counsel, Attorney Magrisso, placed one of the emails Stinnett gave at the hearing, stinnett924@gmail.com, on the proposed CMR. Doc. 42-2. However, in her unilateral version of the CMR (Doc. 45), Stinnett whited out this email address and handwrote on the CMR with the jointly-approved dates:

"lavenusstinnett@gmail.com" with the handwritten note "opposing counsel are only authorized to email me at above email address and no other." Doc. 45.

It now appears in retrospect that Stinnett has apparently misled Delta as well as this Court regarding her correct email address. In addition, Stinnett unilaterally altered and filed the CMR (Doc. 45) without first conferring with opposing counsel as required by Local Rule 3.01(g). Stinnett has repeatedly failed to comprehend and comply with the Rules that require her to cooperate on procedural matters.

Based on the foregoing, it is **ORDERED** as follows:

1. Plaintiff's Response to the Order to Show Cause (Doc. 44) is **STRICKEN** as unsigned.

2. Plaintiff is **ORDERED** to file a notice by **September 19, 2022** with the Clerk listing her correct email address for the Court and opposing counsel to contact her in the case.

3. Plaintiff Venus Stinnett is **ORDERED** by **September 26, 2022** to read the Local Rules of the Middle District of Florida, https://www.flmd.uscourts.gov/local-rules, as well as the Middle District's "Guide for Proceeding Without a Lawyer," https://www.flmd.uscourts.gov/litigants-without-lawyers, and file a Notice certifying that she has done so by **September 27, 2022**. As

explained in the Guide: "Lying in a court document is perjury and is a crime punishable by imprisonment."

4. **Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice.**

5. The version of the CMR filed by Delta, Doc. 42-2, will be the version used for preparing the Case Management and Scheduling Order.

**DONE** and **ORDERED** in Orlando, Florida on September 12, 2022.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Plaintiff Venus Stinnett

# EXHIBIT M

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**VENUS STINNETT,**

        **Plaintiff,**

**v.**                                        **Case No: 6:22-cv-431-WWB-DAB**

**DELTA AIR LINES, INC.,**

        **Defendant.**

---

## ORDER ADMONISHING PLAINTIFF
## FOR THE THIRD TIME

    This cause comes before the Court on review of Plaintiff Venus Stinnett's Responses in Opposition to Defendant's Motion for Summary Judgment (Doc. 62) and the Motion to Stay Discovery Pending Resolution of Defendant's Motion for Summary Judgment (Doc. 61).

    Plaintiff continues—despite two previous admonitions[1]—to fail to follow the Rules of this Court. Plaintiff was previously **ordered** to read the Local Rules of the Middle District of Florida, https://www.flmd.uscourts.gov/local-rules, as well as the Middle District's "Guide for Proceeding Without a Lawyer," https://www.flmd.uscourts.gov/litigants-without-lawyers, and file a Notice

---

[1] *See* Docs. 43, 47.

certifying that she has done so. Doc. 47. On September 26, 2022, Plaintiff filed the certification that she had read the Local Rules. Doc. 52.

Despite Plaintiff's representation that she properly acquainted herself with the Local Rules, she has failed to follow them in preparing her Responses. Local Rule 1.08 sets forth the requirements for all motions and responses filed in the Middle District of Florida: all text must be double-spaced and 13-point Book Antiqua, Calisto MT, Century Schoolbook, Georgia, Palatino or 14-point Times New Roman for optimum legibility. M.D. Fla. L. R. 1.08(a), (b).

Plaintiff's Responses (Doc. 61, 62) fail to comply with Local Rule 1.08 and the Clerk is **DIRECTED** to **STRIKE** the documents and remove them from the docket.

When a motion for summary judgment is supported by affidavits and/or other documents, the party opposing the motion may not depend upon the mere allegations in her pleadings to counter it. Pursuant to Federal Rule of Civil Procedure 56, the party opposing the motion must respond with counter sworn affidavits and/or documents to set forth specific facts showing that there is a genuine issue of material fact in dispute which should be litigated at the trial. If Plaintiff, as the opposing party, fails to respond to the motion, or responds, but the response does not comply with the requirements of Rule 56 as stated above, the Court may declare that the facts in the affidavits and/or documents supporting the motion are

established as true and that there is no genuine issue of material fact in dispute. In

that event, if the applicable law allows, the party who filed the motion will be

entitled to have the motion granted and final judgment entered in the defendant's

favor based upon the pleadings, depositions, answers to interrogatories, and

answers to admissions, or other evidence, filed along with the affidavits. In that

event, there will be no trial or further evidentiary hearing and the case will be ended

in this Court.

Plaintiff is **ORDERED** to refile responses that **conform to the typography**

**requirements of the Local Rules** by **December 22, 2022**. Thereafter, the motion

will be taken under advisement by the Court and an Order entered thereon without

further notice. Plaintiff is again warned that an Order could result in the case being

terminated without any further proceedings.

**DONE** and **ORDERED** in Orlando, Florida on December 15, 2022.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Plaintiff Venus Stinnett

- 3 -

# EXHIBIT N

Rosonda Brown
24426 Dracaea Ave. Apt. 4
Moreno Valley CA 92553
760-552-9802
Rosondabrown@yahoo.com

ROSONDA BROWN, PRO SE PLAINTIFF

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

|  |  |
|---|---|
| **ROSONDA BROWN**<br>Plaintiff (Pro Se)<br><br>v.<br><br>**DELTA AIR LINES, INC.**<br>Defendant | )   **CASE: 1:22-cv-04566-SEG-JSA**<br>)<br>)   **REQUEST FOR A**<br>)   **CONFERENCE WITH COURT**<br>)   **TO RESOLVE DISCOVERY**<br>)   **DISPUTES**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REQUEST FOR CONFERENCE WITH THE COURT

To the Honorable Judge Anand,

Today, Plaintiff read the Court's Order in DKT#72 and Opposing Counsel's statements to the Court were disingenuous and false, as the parties already had a Meet and Confer on these issues on 10/11/2022. (Please see Plaintiff's attached Declaration and email.) Opposing Counsel has been bombarding Plaintiff with unnecessary, harassing phone calls, which serve no purpose, which Plaintiff would like to request a Protective Order to enjoin Opposing Counsel from further harassing Plaintiff with these unnecessary phone calls. Also Plaintiff was never heard(denied due process) before the Court issued the Order and was based on Opposing Counsel's lies and misstatements to the Court.

## REQUEST FOR CONFERENCE WITH COURT

Because the parties already had a Meet and Confer on these issues on 10/11/2022, Plaintiff is requesting a Conference with the Court to resolve the following Discovery Disputes:

1) On 10/11/2022, the parties meet and conferred about the logistics of Plaintiff's deposition and had/have a discovery dispute.. Per Rule 1 and Rule 26(protective order), Plaintiff is requesting a Zoom deposition, as Plaintiff can not afford a plane ticket and Plaintiff does not want to be alone with Delta's 2 male lawyers in their office.   (see Plaintiff's Motion for Counsel and Protective Order). **To avoid harassment and unnecessary financial burdens**(purchasing plane ticket and overnight accommodations in Georgia) per Rule 1 and Rule 26, Plaintiff is

## REQUEST FOR CONFERENCE WITH THE COURT

requesting Court ORDER Plaintiff be allowed to take a ZOOM deposition or in the alternative, GRANT Plaintiff's Motion for Counsel and ORDER Defendant to provide Plaintiff with airplane transportation to the deposition in Atlanta and overnight hotel accommodations, and GRANT Plaintiff's Motion for Counsel and Protective Order.

2) On 10/11/2022, the parties meet and conferred about Opposing Counsel, Tom Munger's violation of the 9/28/22 Court Order, where the Court ordered Defendant to produce the Rule 34 documents by 10/12/2022. As of October 14, 2022, Defendant has not produced any of the Rule 34 documents by 10/12/2022. On 10/11/2022, when the parties meet and conferred Opposing Counsel, Tom Munger, informed Plaintiff that he had not produced any of the documents yet. The parties had/have a discovery dispute as of 10/12/2022, since Opposing Counsel, Tom Munger's violated the 9/28/22 Court Order and has not produced these documents to Plaintiff by 10/12/2022.

3) **PLAINTIFF HAS MET ALL OF HER DISCOVERY OBLIGATIONS:** No additional conference is necessary with Opposing Counsel, Tom Munger, as Plaintiff has already produced her address history, amended her Interrogatory and Rule 34 responses, and signed the medical release authorization that the Court ordered Plaintiff to sign.

4) At this time, the parties have no new issues that the parties need to meet and confer about, as Plaintiff complied with all Court Orders and have produced everything to Opposing Counsel that Plaintiff was required to produce. The parties only now have discovery disputes, all of which the parties have already met and conferred about on

**REQUEST FOR CONFERENCE WITH THE COURT**

10/11/2022.  Because Defendant has violated the 9/28/22 Court Order and Defendant will not agree to conduct Plaintiff's deposition via Zoom, the parties need the Court to resolve these issues with a Court conference.


DATED: October 14, 2022 _____ /s/ _____

                         ROSONDA BROWN, PRO SE PLAINTIFF

**REQUEST FOR CONFERENCE WITH THE COURT**

## AFFIDAVIT OF ROSONDA BROWN

I, Rosonda Brown , am over the age of eighteen and understand the obligations of an oath. I, Rosonda Brown, have personal knowledge of all of the facts in this Affidavit and the information set forth in this Affidavit is true and correct to the best of my knowledge, except where stated "upon information and belief." Being duly sworn, I hereby state the following:

1. On 10/11/2022, The parties had a telephonic Meet and Confer with Opposing Counsel as to all of the issues that Plaintiff is requesting a conference with the Court about, as the parties have discovery disputes. Plaintiff satisfied the meet and confer rule with her 10/11/22 telephonic conference with Opposing Counsel, Tom Munger.

2. Opposing Counsel made intentionally false statements to the Court, which led the Court to issue Court Order #72. At no time has Plaintiff ever refused to meet and confer with Opposing Counsel. However, Plaintiff is not required to meet and confer with Opposing Counsel a SECOND TIME for the same exact discovery issues. Opposing Counsel has been bombarding Plaintiff with unnecessary, harassing phone calls, which serve no purpose.

3. Exhibit A is a true and correct copy of the 10/11/2022 email Plaintiff sent Opposing Counsel, memorializing the 10/11/2022 meet and confer telephonic conference that the parties had on 10/11/2022, which the parties still have discovery disputes on, necessitating the Court to resolve these discovery disputes.

## REQUEST FOR CONFERENCE WITH THE COURT

4. Because Plaintiff satisfied the meet and confer rule with her 10/11/22 telephonic conference with Opposing Counsel, Tom Munger, Plaintiff has no need to have another meet and confer conference with Opposing Counsel about the same exact issues and same discovery disputes that were discussed at the 10/11/22 meet and confer with Opposing Counsel Tom Munger. No additional conference is necessary with Opposing Counsel, Tom Munger, as Plaintiff has already produced her address history, amended her Interrogatory and Rule 34 responses, and signed the medical release authorization that the Court ordered Plaintiff to sign.

5. As of today 10/14/2022, Defendant has failed to produce the Rule 34 documents to Plaintiff in violation of the Court's 9/28/22 order.

6. Because the parties had a meet and confer to discuss the logistics of Plaintiff's deposition and the parties have a discovery dispute as Defendant will not agree to conduct Plaintiff's deposition via Zoom, the parties need the Court to resolve this issue with a Court conference.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed in Los Angeles, CA on 10/14/2022.


_____ /s/ _____
ROSONDA BROWN, PRO SE PLAINTIFF

_____

**REQUEST FOR CONFERENCE WITH THE COURT**

# CERTIFICATE OF SERVICE

I hereby certify that this "REQUEST FOR A CONFERENCE WITH COURT TO RESOLVE DISCOVERY DISPUTES " was served on Delta's attorneys Thomas Munger by emailing an identical, true and correct copy to tom.munger@mungerandstone.com  on October 14, 2022 and by placing the same in the United States Mail, postage prepaid, addressed to:

> Munger & Stone, LLP
>
> 999 Peachtree Street, NE, Suite 2850
>
> Atlanta, GA 30309

Respectfully submitted on October 14, 2022

_____/s/_____
ROSONDA BROWN, PRO SE PLAINTIFF

---

**REQUEST FOR CONFERENCE WITH THE COURT**